Lawrence Katz, Esq.
Law Offices of Lawrence Katz,
70 East Sunrise Highway, Suite 500
Valley Stream, NY 11581
516-374-2118
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LARA M. SANDERS on behalf of themselves and all other similarly situated consumers,<br><br>*Plaintiff,*<br><br>- against -<br><br>CACH, LLC, RESURGENT HOLDINGS LLC, and RESURGENT CAPITAL SERVICES L.P.,<br><br>*Defendant.* | Case:   19-996(JLL) |

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION**

Plaintiff LARA M. SANDERS ("Plaintiff") on behalf of themselves and all other similarly situated consumers, by counsel Law Offices of Lawrence Katz submits the following opposition to Defendants CACH LLC, RESURGENT HOLDINGS LLC, and RESURGENT CAPITAL SERVICES L.P., ("Defendants") pre-answer motion to dismiss, dated June 13, 2019.

**PRELIMINARY STATEMENT**

This case involves several claims alleged under the Fair Debt Collection Practices Act (FDCPA), breach of contract, and Fair Credit Reporting Act (FCRA).

The Plaintiff duly filed her complaint on June 23, 2019 (ECF 1), subsequently by Order dated  May 15, 2019 the Court directed that Plaintiff may file her amended complaint (ECF 19), thereafter, on May 30, 2019 Plaintiff duly filed her Amended Complaint (ECF 21).

In the Memorandum in support of Defendants' Rule 12(b) motion, they manipulate and cherry-pick factual allegations of the Amended Complaint they wish to address and deliberately leave out the factual contents essential to the Plaintiff's causes of action. As the Court is aware, the allegations in the Amended Complaint are to be assumed as true in the light most favorable to Plaintiff.  In short, the Court may not rely on Defendants self-serving summation of the Amended Complaint but must test the sufficiency of the amended complaint on its own.

## **THE ESSENCE OF THE CAUSES OF ACTION**

Resurgent Holdings LLC ("Resurgent Holdings") acquired Cach LLC ("Cach") in a Chapter 11 bankruptcy. Afterwards, Cach sued Plaintiff for a consumer debt, which was settled and dismissed with prejudice ("settlement"). (ECF 21-1, 21-6). The Amended Complaint alleges that two months after the settlement that Defendants (individually or acting in concert with each other) reported the settled debt on Plaintiff's credit report as past due.  The essential dates for liability, which Defendants obfuscate, are February 7, 2018 and February 13, 2018.

The Amended Complaint states, on February 7, 2018, Defendants updated the debt on Plaintiff's credit report as owed in full without recognizing the settlement amount and the update was made in the sole name of Cach. (ECF 21 ¶ 32).

The amended complaint states, on or about February 13, 2018, the resolved debt was reported as an "open account" still ">in collection<" owing $14,372.00, (an amount claimed in the dismissed lawsuit less the $1,000.00 settlement payment). (ECF 21 ¶ 34). This report was made in the name of Cach in care of Resurgent Capital Services (Resurgent Capital). (Id.)

The foregoing two dates are the core of this entire lawsuit. The amended complaint offers a historical breakdown of the facts by providing the history of how Defendants bait-and-switch the names of their alter egos resulting in confusion to the consumer.

**DEFENDANTS BAIT-AND-SWITCH TO CONFUSE THE CONSUMER**

Utilizing the bankruptcy of Cach, the Defendants bait-and-switch to confuse the consumer as to who is the responsible party for servicing any alleged consumer debt.

Defendants bait-and-switch is exemplified by the attachment of the bankruptcy order approving a prepetition plan for Cach as a debtor affiliate with SquareTwo Financial Services Corp. (Bankruptcy Order). (ECF 23-1). This bankruptcy order, 154 pages long, has all sorts of names that are defined with different superficial words, references to other documents in that bankruptcy proceeding not attached to that order[1], and requires a comprehensive exhaustion of bankruptcy procedure to explain and dispel every myth that Defendants are attempting to throw at the Court regarding that bankruptcy order.

Defendants failed to disclose the Transition Services Agreement because it specifies that Resurgent Holding is the "buyer" of Cach, and Resurgent Capital is the "Master Servicer" of all the consumer debt portfolios. (See attached Exhibit 1). In the bankruptcy order, this Transition Service Agreement is referenced in Article I ¶ 1.112 as part the Funding Plan that the bankruptcy order approved (ECF 23-1 p. 65), demonstrating that Resurgent Holding is the face behind Cach.

To summarize the Cach's bankruptcy in plain terms: Resurgent Holdings stepped in as a third-party investor to buyout 100% of Cach's interest. (ECF 23-1 p. 22 ¶ 15). The payment amount Resurgent Holdings paid for Cach became the bankruptcy estate, upon which all creditors are to be satisfied. The new owner of Cach is Resurgent Holding and meanwhile the bankruptcy estate is designated as a Reorganized Debtor (or as related herein Reorganized Cach); a designation made for purposes of dissolving the estate. (ECF 23-1 p. 21 ¶¶ 10-13). In

---

[1] Such as "Capitalized terms not defined herein shall have the meanings given them in the Plan Funding Agreement, the RSA, and the TSA, as applicable" ECF 23-1 p.54 n. 2. "Transition Services Agreement (as defined in the Plan Funding Agreement." ECF 23-1 p. 65 ¶ 1.112.

order to have a bankruptcy court approve such arrangement, a debtor must submit a "plan" to repay the creditors. Resurgent Holdings is called the "Plan Investor" for having stepped in as the investor to buyout Cach. (ECF 23-1 p. 65 ¶ 1.111). In sum, the right hand is the owner and the left hand is the servicer; but the trinity of Resurgent Capital, Resurgent Holding, and Cach involve one body united as one personality for handling the consumer's debt.

As noted by ECF 23-1, the Plan was approved on June 9, 2017 and Resurgent Holdings became the new owner of Cach. On July 20, 2017, Cach commenced a consumer debt claim against Plaintiff in state court. (ECF 21-3). Nowhere did the Defendants disclose to the consumer that Resurgent Capital is the servicer of the alleged consumer debt.

Afterwards came the events essential to the Amended Complaint, on January 30, 2018 Resurgent Capital verified the settlement. (ECF 21 ¶ 33, 21-6). On February 7, 2018, the Defendants updated Plaintiff's credit report and communicated that the consumer debt is owed in full ($15,372) (without recognizing the settlement amount) and this update was made in the sole name of Cach, without naming Resurgent Holdings or Resurgent Capital. On February 13, 2018, the resolved debt was reported again as an open account still "in collection" owing $14,372.00 (an amount claimed in the underlying state complaint of Cach less the $1,000.00 settlement payment), a report made in the name of Cach in c/o Resurgent Capital. (ECF 21 ¶ 34, 21-7).

The Defendants system of bait-and-switch utilizing alter egos are obvious, first telling the consumer you owe nothing more, then flip-flopping and telling the consumer that she owes the entire amount implying that settlement payment is meaningless, and then switching again saying that you just owe the balance less the settlement amount. This bait-and-switch is playing fast and loose with the consumer and misleading and confusing the consumer.

Moreover, the consumer having settled with Cach received a settlement letter from Resurgent Capital confirming so, the collector flips back in the name of Cach to tell the consumer that the entire amount is owed, and then Resurgent Capital in its bait-and-switch with the consumer reports as owing the full balance less the $1,000 payment of the settlement amount. The use of alter egos and playing fast and loose with the consumer is the very type of "abusive, deceptive, and unfair debt collection practices" that Congress sought to end. 15 U.S.C. 1692(a).

The Court should consider this debt history and note how confusing that is to a consumer and certainly was to Plaintiff as she was forced to further engage the services of an attorney. The Amended Complaint alleges that Defendants play fast and loose with the consumer, "intentionally continue collecting on resolved debt to humiliate the consumer in an attempt to extract further payment and in misleading the consumer into thinking that the only way to avoid a negative credit report is to make a payment for the full collection amount irrespective of the settlement amount previously negotiated by that consumer's attorney." (ECF 21 § 41).

In the alternative, all the Defendants are represented by the same counsel, and answering the question of who did what is fairly accessible to the same counsel. Yet Defendants have not produced any documentation to absolve either Defendants from being a party to the false communication at issue.  As discussed herein the Bankruptcy Order simply confirms that Defendants are a singular unit when it comes to handling Plaintiff's debt.

## **COUNTER-ARGUMENTS**

Defendants plainly have recycled arguments without absolving any of the Plaintiff's causes of action, especially since the Defendants obfuscate essential facts giving rise to the Amended Complaint.

**Responding Point I**: FRCP 8(d) provides that (2) "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." And (3) "A party may state as many separate claims or defenses as it has, regardless of consistency."

The first claim for relief has two counts (¶¶ 68-71) and one alternative-hypothetical claim (¶72). In Point I of its arguments, Defendants have placed their focus on ¶ 72, the alternative-hypothetical claim and falsely asserts that they were not attempting to collect a debt.

As explained above, on February 7 and 13 of 2018, Defendants advanced collection against Plaintiff on a resolved debt. If assuming that Defendants may have a colorable defense for such collection activity, then the Amended Complaint has set forth a valid alternative-hypothetical claim that Defendants failed to provide the elementary information required pursuant to §§1692g(a)(1),(2), (5).  At this point in the case, Defendants have not filed an answer, and therefore it is impossible for the court at this juncture to rule out the potential defenses to the first causes of action and such corresponding alternative-hypothetical claim.

**Responding to Point II**: The essential dates for liability, which Defendants obfuscate, are February 7, 2018 and February 13, 2018. Since the complaint was filed on January 23, 2019, the FDCPA's one-year statute of limitations has not run.

**Responding to Point III**: The Third Circuit held in the context of the FDCPA, a "debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 269 (3d Cir. 2019).  The "principal-agent relationship requires that the principal either control or have the right to direct or control the agent." *Id*. "Although the Fourth Circuit has not yet ruled on vicarious liability

under the FDCPA, more courts than not 'support the notion that an entity which itself meets the definition of debt collector may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515, 534 (D. Md. 2019). "That is because a debt collector should not be able to avoid liability for unlawful debt collection practice simply by contracting with another company to do what the law does not allow it to do itself." *Id*. It is the law of this Circuit, "an entity that otherwise meets the 'principal purpose' definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting." *Barbato* at 261.

The amended complaint uses distinct names so the Court could easily identify the hat Defendants used to commit each act. It is important to note, Cach is no longer an independent debt collector and no longer acts on its own when collecting debt. (See Exhibit 2, a true copy of a printout of its website). As explained above, Resurgent Holdings is the owner of Cach's consumer debt portfolio and Resurgent Capital services those accounts; Resurgent Holdings cannot claim ignorance from the acts committed in the name of Cach by Resurgent Capital.

Here the Amended Complaint also alleges acts attributed by Resurgent Holdings. Namely, on February 7, 2018, an update of the debt was made on Plaintiff's credit report as past due (in full without recognizing the settlement amount). The February 7, 2018 update was made in the sole name of Cach. Since Cach no longer operates as an independent corporation, Resurgent Holdings is responsible for all acts committed in the name of Cach.

Given that at all relevant times (since June 9, 2017 (ECF 23-1)) Resurgent Holdings and Resurgent Capital are the successors of Cach, and since all the relevant factual allegations of the Amended Complaint referring to Cach happened through Resurgent Holdings and Resurgent Capital using the name of Cach, and since Resurgent Holdings has the right to direct or control

Cach, the Amended Complaint properly incorporates Resurgent Holdings for its vicarious liability. See ECF 21 ¶¶ 68-71.  The allegation here is that Defendants, individually or in concert with each other, reported a false debt.

**Point IV**: Contrary to Defendants argument, the settlement entered into with Cach (ECF 21-1) and the confirmation of the settlement (ECF 21-6) confirm a mutually executed contract based on consideration; *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 572 (D.N.J. 2016).  The Court also held that "it would be premature to rule out the possibility of damages beyond monetary loss where Plaintiffs state that they have suffered adverse credit consequences because of Defendant's breach [of contract]." *Id* at 577–78.

Plaintiff has pled damages in several ways. First, Defendants caused Plaintiff the costs of having to further retain counsel. (ECF 21 ¶ 79).  Second, a statute can define an egregious act that is a cause for damages. The FDCPA has clearly defined the misrepresentation of a debt as fraud and cause for damages. *See* § 1692e. The Amended Complaint pleads, "Defendants injured Plaintiff's right to receive truthful information regarding the subject collection of a debt." (ECF 21 ¶ 39).  Third, Defendants "attempt[ed] to extract further payment and in misleading the consumer into thinking that the only way to avoid a negative credit report is to make a payment for the full collection amount irrespective of the settlement amount previously negotiated by that consumer's attorney." (ECF 21 ¶ 41).  These elements adequately plead for an award of quantifiable damages, of at least nominal damages, while the actual figures of damages are properly reserved for trial.

Indeed, damage to a credit report and costs incurred with correcting such damage are an adequate plea of damages. *Heyman v. Citimortgage, Inc.*, No. 14-1680-KM-MAH, 2019 WL 2642655, at *25 (D.N.J. June 27, 2019), *Cave v. Saxon Mortg. Servs., Inc.*, No. CIV.A. 12-5366,

2013 WL 1915660, at *11 (E.D. Pa. May 9, 2013), *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012).

**Point V**: Contrary to Defendants argument, the Amended Complaint pleads for a cause of action under 15 U.S.C.A. § 1681s-2(b); there is no mention of any claim under § 1681s-2(a).

In *Fumelus v. Experian Info. Sols., Inc.*, No. CV 18-10237, 2019 WL 1509140, at *4 (D.N.J. Apr. 5, 2019) the Court found that "The Amended Complaints allege that Diamond Resorts reported the account as 'open' when it was actually 'charged off', and reported that the loan balance was '$10,883' when it was really '$8,037.97.' … These allegations plausibly support a conclusion that Diamond Resorts furnished inaccurate information." *Fumelus v. Experian Info. Sols., Inc.*, No. CV 18-10237, 2019 WL 1509140, at *4 (D.N.J. Apr. 5, 2019) also see *Turner v. Wells Fargo Dealer Servs., Inc.*, No. 117CV01257TCBCMS, 2017 WL 8220605, at *4 (N.D. Ga. Oct. 23, 2017), report and recommendation adopted, No. 1:17-CV-1257-TCB, 2017 WL 8222344 (N.D. Ga. Nov. 13, 2017). "In short, 15 U.S.C. § 1681s-2(b) requires, among other things, the 'complete and accurate post-dispute reporting of debts.' Unlike a furnisher's obligations under § 1681s-2(a), the obligations under § 1681s-2(b) are enforceable by a private right of action by a consumer." See *Coulter v. Pennsylvania Higher Educ. Assistance Agency*, No. 5:17-CV-03689, 2018 WL 2216205, at *2 (E.D. Pa. May 15, 2018) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 866-67 (3d Cir. 2014)).

This case goes even further than *Fumelus* and falls in line *infra* with *Coulter* and *Seamans;* Plaintiff no longer owed Defendants any debt whatsoever, Plaintiff disputed the inaccurate report with the credit reporting agency (the "CRA") as "account is settled," and yet Defendants insisted on further reporting that the debt as owed. (ECF 21-5). In this circumstance,

Defendant violated 15 U.S.C. § 1681s-2(b) which requires a complete and accurate post-dispute reporting of debts and this action is enforceable through a private cause of action.

**Point VI**: as explained earlier in POINT III, Resurgent Holdings cannot eviscerate itself from the liabilities committed by operating under the name of Cach.

**Point VII**: Contrary to the Defendants collective misrepresentations, all the acts material to this case accrued or occurred in the State of New Jersey. 28 U.S.C.A. § 1391(b)(2).

In addition, Resurgent Capital is registered to do business in the State of New Jersey. (Exhibit 3). Also, Cach LLC is registered to do business in the State of New Jersey. (Exhibit 4). To the extent that Resurgent Holding became the successor of Cach, Resurgent Holding cannot bail from the State of New Jersey for its failure to register with the State as a foreign corporation, when in fact Resurgent Holding has acted in the name of Cach and pestered Plaintiff over a resolved debt. 28 U.S.C.A. § 1391(b)(1), (d).

## CONCLUSION

**WHEREFORE** Plaintiff requests that the Court enter an order denying the Defendants motion to dismiss and granting to Plaintiff such other and further relief including reserving Plaintiff's right to seek leave to further amend the complaint if deemed necessary to better reflect the facts of this case.

Dated: Valley Stream, New York
July 14, 2019

    Respectfully submitted,
    Law Offices of Lawrence Katz,

    /s/ Lawrence Katz
    By: Lawrence Katz, Esq.,