```
1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
2

3   LARA M. SANDERS, on behalf   : Case No. 2:19-cv-00996-SDW-JAD
    of herself and all other     :
4   similarly situated consumers, :
                                  :
5            Plaintiff,           :
                                  :
6        vs.                      :
                                  :  Newark, New Jersey
7   CACH, LLC, RESURGENT          :  Wednesday, October 28, 2020
    HOLDINGS, LLC, and RESURGENT  :
8   CAPITAL SERVICES L.P.,        :
                                  :
9            Defendants.          :
```

```
10           TRANSCRIPT OF ZOOM STATUS CONFERENCE
           BEFORE THE HONORABLE JOSEPH A. DICKSON
11              UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For the Plaintiff:          Law Offices of Lawrence Katz
                                By:  LAWRENCE KATZ, ESQUIRE
14                              445 Central Avenue, Suite 201
                                Cedarhurst, NY 11516
15
                                Levi Huebner & Associates, P.C.
16                              By:  LEVI HUEBNER, ESQUIRE
                                488 Empire Boulevard, Suite 100
17                              Brooklyn, NY 11225

18  For the Defendants:         Kaufman, Dolowich & Voluck, LLP
                                By:  MONICA M. LITTMAN, ESQUIRE
19                              Two Logan Square
                                100 N. 18th Street, Suite 701
20                              Philadelphia, PA 19103

21  Transcription Company:      KLJ Transcription Service, LLC
                                P.O. Box 8627
22                              Saddle Brook, NJ 07663
                                (201)703-1670 - Fax (201)703-5623
23                              www.kljtranscription.com
                                info@kljtranscription.com
24
    Proceedings recorded by electronic sound recording, transcript
25  produced by transcription service.
```

2

1                          I N D E X

2

3     COLLOQUY ON OUTSTANDING DISCOVERY ISSUES:              PAGE

4     Re:  Chain of Title Documents.. . . . . . . . . . . . 4

5     Re:  Communications with Federated Law Group. . . . . . 16

6     Re:  CACH Consumers Serviced by RCS.. . . . . . . . . . 25

7     Re:  Lawsuits Filed Against/By Defendants.. . . . . . . 40

8     Re:  Coding Issue & Manual. . . . . . . . . . . . . . 47

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                            3

1          (Conference recording commenced.)

2              (Mr. Huebner's stream has buffering/cutting out and

3     feedback throughout.  Feedback and cutting out increased when

4     parties are speaking over each other.)

5          THE COURT:  All right.  We're on the record in

6     Sanders v. CACH -- C-A-C-H -- CACH, LLC, et al., Docket Number

7     19-996.  May I have appearances, please?

8              MR. KATZ:  Lawrence Katz --

9              MR. HUEBNER:  Levi Huebner -- sorry, I jumped.

10    Sorry.

11             MR. KATZ:  Lawrence Katz for the plaintiff.  Good

12    afternoon, Your Honor.

13             THE COURT:  Good afternoon.

14             MR. HUEBNER:  Levi Huebner.  Good afternoon, Your

15    Honor.

16             THE COURT:  Good afternoon, Your Honor.

17             MS. LITTMAN:  Your Honor, this is Monica Littman,

18    representing the defendants CACH, LLC and Resurgent Capital

19    Services, L.P.

20             THE COURT:  Okay.  All right.  So, we have a -- some

21    discovery disputes here to deal with.  And I have reviewed the

22    letters submitted by counsel and I've gone through the

23    disputes.  I have some questions.  And we'll just try to take

24    them in order.

25             And this is not by way of preference over any

1   position, but I am going to refer to the issues as set --

2   outlined in Ms. Littman's letter, it's document ECF 75, the

3   letter dated September 18th.  My understanding of the letter

4   in response to that is that the same issues were all

5   addressed, so -- and I think in the same order.

6            Having said that --

7            MR. HUEBNER:  I apologize, Your Honor.  I'm a little

8   confused, Your Honor.  75 is her response -- is Ms. Littman's

9   response to our letter.

10           THE COURT:  That's right.

11           MR. HUEBNER:  Okay.  So, you're -- okay.

12           THE COURT:  Oh, I -- I may have it called it her --

13  your response, but yeah, so let's go to the beginning.

14           Chain of title documents.  Is that still really an

15  issue?

16           MR. HUEBNER:  Yes, Your Honor.

17           THE COURT:  Why?  I -- explain to me why it's an

18  issue, based on what she has told you about the bill of the

19  sale and assignment --

20           MR. HUEBNER:  Usually, when there's a --

21           THE COURT:  -- where --

22           MR. HUEBNER:  Usually, when there's a chain of

23  title, it doesn't just say it was sold and there's what did

24  they buy, what are their rights, there's a schedule A, what

25  are they getting under the schedule A, when does it start

1   from, when does it end, when did it appear.  We didn't get any

2   of that, Your Honor.  And that -- that really -- it's a simple

3   thing and it really -- we really should have gotten that.  And

4   that -- and that's a normal chain of title.  And who it was

5   originally bought from and where -- how it got to them.  The

6   documents that --

7            THE COURT:  Is it not --

8            MR. HUEBNER:  The documents that (indiscernible) --

9            THE COURT:  Is it not clear -- sir, is it not clear

10  to you that Citibank assigned and sold plaintiff's account to

11  CACH, LLC?  Citibank --

12           MR. HUEBNER:  So (indiscernible) --

13           THE COURT:  -- Citibank would --

14           MR. HUEBNER:  -- for -- there's a couple of --

15  there's a couple of issues here, because there's a reporting

16  by Resurgent and there's a reporting CACH and I don't know

17  which entity is it -- is really in control of the debt and

18  which entity had authority to act on behalf of the debt and

19  try to -- try to collect on the debt.  And I don't know why I

20  shouldn't get the complete chain of title.

21           MS. LITTMAN:  I think, Your Honor, those -- what Mr.

22  Huebner said is conflating with, you know, who's collecting

23  versus the chain of title are two different issues.  And in

24  addition, pursuant to I think our -- I believe our last call,

25  defendants produced a power of attorney document between each

1   other.  So that has also been produced.

2          THE COURT:  Mr. Huebner, I'm not -- I still don't

3   understand exactly what the problem is.  So, I'm sorry.  I'm

4   trying to understand it.  What is the -- what -- how does this

5   -- how does any of this relate to the claims -- the claims and

6   defenses in this lawsuit?  And let me -- let me state what I

7   understood the claims to be.  And if I'm wrong about that,

8   then you could correct me there and maybe it'll start to

9   become more clear to -- the whole thing will become more clear

10  to me.

11          I thought this was a claim that your client actually

12  compromised a debt it owed to Citibank and then thereafter,

13  for reasons that -- that, you know, we'll either resolve

14  during a settlement conference or -- or during a trial or a

15  motion -- or a dispositive motion -- thereafter the defendants

16  tried to collect the debt in full.  And they now I think

17  acknowledge that the debt was compromised.  So, isn't that

18  what the case is about?

19          MR. HUEBNER:  Well, that's part of the case, but

20  there's also Fair Credit Reporting Act issues, and we have a

21  right to have -- to make -- if we get information that's

22  appropriate, that we may have to amend our complaint based on

23  information furnished to us if it is or wasn't appropriate.

24  And in that -- and that's why, in that light -- and I'm just

25  trying to open up that one page, if I may, Your Honor?

Colloquy                                                    7

1                         (Extended pause)

2              MR. HUEBNER:  I apologize for the delay.  I'm just

3    trying to open up --

4              THE COURT:  What are you trying to open up?  Is it

5    anything I have access to?

6              MR. HUEBNER:  Well, I'll get into it in a second.  I

7    just want to look at it, so I can refer to it.

8              THE COURT:  Okay.

9              MR. HUEBNER:  Defendants' responses.

10                        (Extended pause)

11             MR. HUEBNER:  All it is, is it's a bill of sale --

12   it's a purported bill of sale and -- and an assignment that --

13   that it supposedly went to cash and it doesn't have -- it

14   doesn't have the schedule attached to it.  And not only that

15   it does not have the schedule attached to it, but I want to

16   know -- I -- then there's authority -- what's the authority

17   that -- that -- that -- that Resurgent had to act on behalf of

18   the debt and -- and where did that come from?  And I'm

19   entitled to that chain of title.  And they can't just day this

20   is good enough and -- and have a -- and take a hike.

21             THE COURT:  What --

22             MR. HUEBNER:  It -- one page is completely

23   ridiculous.

24             THE COURT:  Ms. Littman, did the power of attorney

25   deal with Resurgent or only CACH?

Colloquy                                                    8

1          MS. LITTMAN:  Hold on one second, Your Honor.

2                        (Extended pause)

3          MS. LITTMAN:  I just -- I just want to check.  I

4    believe it was -- it was between both entities.

5                        (Extended pause)

6          MS. LITTMAN:  Yes, we -- we produced a limited power

7    of attorney involving CACH and Resurgent Capital Services.

8          THE COURT:  So the power went from CACH to

9    Resurgent?

10         MS. LITTMAN:  It's -- yes.

11         THE COURT:  I mean, my understanding --

12         MS. LITTMAN:  Yes.  Yes.

13         THE COURT:  -- it was that Citi --

14         MS. LITTMAN:  CACH -- CACH has (indiscernible) --

15         THE COURT:  -- that Citibank sold --

16         MS. LITTMAN:  It's --

17         THE COURT:  -- the note -- Citibank sold the debt to

18   CACH and --

19         MS. LITTMAN:  Yes.

20         THE COURT:  -- CACH -- and CACH issued a power of

21   attorney to Resurgent to allow it to operate on its behalf.

22         MS. LITTMAN:  Yes.

23         THE COURT:  All right.  Now, Mr. Huebner also talks

24   about a schedule that should have been --

25         MR. HUEBNER:  Oh, --

1    THE COURT:  -- attached to the bill of sale.

2    MR. HUEBNER:  It's really -- they referred to an

3  exhibit -- accounts described in Exhibit 1 and the bill of

4  sale and assignment it says counts -- accounts described in

5  Exhibit 1.  Well, where's the Exhibit 1?  I don't have the

6  Exhibit 1.  Maybe my client's account is not even in that --

7    MS. LITTMAN:  Your Honor, --

8    MR. HUEBNER:  -- in that Exhibit 1.

9    MS. LITTMAN:  Your Honor, in a letter dated August

10  21st to plaintiff's counsel, where we included the power of

11  attorney, we also addressed Exhibit 1.  And defendants are not

12  able to locate a copy, but we represented that it represents

13  the name of the portfolio, which is the subject of the bill of

14  sale, and also the electronic file that's referenced in a bill

15  of sale was also previously produced to plaintiff's counsel

16  only with redactions of names of people who are not parties to

17  this lawsuit.

18    THE COURT:  Okay.  Mr. Huebner, what about that?  It

19  sounds like that they gave you what you're looking for and --

20    MR. HUEBNER:  First of all, an attorney's letter is

21  -- is meaning -- an attorney's letter is meaningless, Your

22  Honor.  And secondly, -- secondly, that's -- it's just -- I

23  got -- I find it's consistent with their -- their -- they have

24  excuses on a regular basis why they don't have documents.  And

25  a -- and a schedule A, I don't understand, if it's in a

1    computer file, how they can say they can't -- they don't have

2    a schedule A.  I don't even -- I -- I'm entitled to see that

3    schedule A and an -- and an excuse that -- from some letter

4    from an attorney is -- is simply not admissible.  It's hearsay

5    and it doesn't mean -- it's meaningless.  Or where -- where --

6    I mean, where's that -- where's the -- and that's exactly goes

7    back to my -- my -- I -- I tried to narrow it down and it goes

8    -- it goes back again now to making a new excuse and it's

9    going to go back again now to my -- to -- to the

10   interrogatories and the -- and -- and doc -- a document that

11   has -- that they re -- refuse the demand.  I mean, I really

12   tried to narrow it down to -- to -- for Your Honor to five

13   items, five areas, five small areas out of a -- of multiple

14   demands, which I got not -- I got nothing.  And all I got was

15   excuses and excuses and excuses.

16            THE COURT:  Well, I just heard counsel say -- of all

17   that you just said, the only thing that I'm really focusing on

18   here is that you don't trust a letter from counsel to tell you

19   that a document --

20            MR. HUEBNER:  I (indiscernible) --

21            THE COURT:  -- no longer exists.

22            MR. HUEBNER:  I'm sorry, Your Honor.  They don't --

23   they didn't want a letter from me -- my -- from -- from our --

24   from plaintiff's counsel, they want an affidavit from my

25   client or a letter from my client that she's dropping -- when

1    we said that she's not --

2            THE COURT:  Well, can I ask you a question?  Mr.

3    Huebner, instead of having this -- the second time in front of

4    me and now taking a whole afternoon to deal with this issue,

5    it sounds like to me you got all the information except you

6    don't have schedule A, which they say they cannot find, and

7    you're unhappy with the lawyer's letter.  Did it occur to you

8    to just send her a letter and saying give me a certification

9    or an affidavit from your client the way you demanded from me

10   and then we'll be done with this issue?

11           She -- see, she -- I -- she just told me that she

12   gave you the schedule with all the names redacted except for

13   your client's name that was found in an electronic file.  I

14   still don't understand what's missing, other than this

15   schedule A, which the client -- or counsel says doesn't exist

16   and, if you're not happy with their representation -- I

17   understand they made you get one, too -- then why don't you

18   just ask her for her client to certify something?  What else

19   are we looking for here on this issue?

20                         (Extended pause)

21           THE COURT:  You're trying to confirm that they have

22   the authority to move against your client.  First of all,

23   nobody corrected me when I said that the defendant has now

24   recognized that they should not have tried to collect a date

25   that was already compromised.  The question is what is their

1   liability for doing so.  Correct?

2            MR. HUEBNER:  I don't think -- there's also the Fair

3   Credit Reporting Act which (indiscernible) --

4            THE COURT:  Well, what does that mean?

5            MR. HUEBNER:  -- (indiscernible) trying to --

6            THE COURT:  What -- what does that -- what does that

7   mean?

8            MR. HUEBNER:  They're trying to -- the plaintiff --

9   the defendant is trying to assert a defense that it's

10  Federated's fault.  And then they haven't given -- and we're

11  getting -- that's getting to the next issue.  They haven't

12  given me their --

13           THE COURT:  Well, we'll get there --

14           MR. HUEBNER:  -- communications with Federated.

15           THE COURT:  -- we'll get there in a minute, but how

16  is that a Fair Credit Reporting Act?  I don't understand.

17  What's -- what's the --

18           MR. HUEBNER:  The Fair Credit Report --

19           THE COURT:  -- (indiscernible)?

20           MR. HUEBNER:  So, there's -- there's a violation of

21  the Fair Credit Reporting Act, because not only that my client

22  disputed it and disputed it with a collection agency, but they

23  -- they give -- they have done re -- re -- improperly reporting

24  it and -- and -- and reporting it in -- in the -- in names

25  other than the entity that they're -- the initial creditor.

1   Giving a power of attorney to act doesn't allow -- giving

2   Resurgent supposedly a power of attorney to act doesn't

3   necessarily give them the right to report.

4           THE COURT:  Well, what is reported as a bad debt

5   after it was compromised?

6           MR. HUEBNER:  Yes.

7           THE COURT:  Okay.  And what is the --

8           MR. HUEBNER:  And it was also reported --

9           THE COURT:  What is the -- what is the --

10          MR. HUEBNER:  -- (indiscernible) date.

11          THE COURT:  What is the statutory penalty?  Has that

12   been -- has that been fixed?  Has it been repaired?

13   Remediated?

14          MS. LITTMAN:  Yes.

15          MR. HUEBNER:  What been remediated, Your Honor?

16          THE COURT:  The false reporting.  Has the --

17          MR. HUEBNER:  I -- I --

18          THE COURT:  -- have the -- have the credit agencies

19   been told that that was a mistake or that that debt is no

20   longer outstanding?

21          MR. HUEBNER:  I don't have any indicia of that, Your

22   Honor.  I don't have any indicia of that from -- from -- from

23   the defendants.

24          THE COURT:  What is the statutory penalty for that?

25   I tell you, we don't -- do you have actual damages in this

Colloquy                                    14

1  case?

2          MR. HUEBNER:  The money that my client spent for the

3  attorneys in the settlement case, Your Honor.  I don't -- I do

4  not have other damages in this case.  We already wrote a

5  letter to -- to the defendants about that.

6          THE COURT:  Okay.

7          MR. HUEBNER:  Statutory -- statutory damages.

8          THE COURT:  Okay.  And that's, what, $1,000?

9          MR. HUEBNER:  I -- I'm not sure on the -- I'm not --

10  I'm not going to pretend like I know for sure.

11          Are you familiar with Fair Credit Reporting Act

12  statutory terms, Mr. -- Mr. Katz?  Because I'm not --

13          MR. KATZ:  (Indiscernible) --

14          MR. HUEBNER:  -- I don't have it on the tip of my

15  tongue.  I apologize.

16          MR. KATZ:  -- Your Honor.

17          THE COURT:  What I'm trying to -- let me tell you

18  where I'm going with this.  I'm not just trying to make life

19  miserable for anybody.  What I am trying to do is just get

20  back to what this case is about and why -- why we haven't been

21  able to settle it yet.

22          In other words, what is the -- you're -- because

23  when I'm looking at all this discovery, you have to look at

24  the -- the magnitude of the claim at issue and -- and this --

25  and all these other issues.  I'm trying to make this -- put --

1   I'm trying to bring this all into context and deal with it in

2   that way.

3            But here's -- here -- well, let me just say this.

4   On this issue of the chain of title, I am not understanding

5   what you don't have, other than maybe an affidavit or

6   certification from the client that they cannot find schedule A

7   to the bill of sale.

8            If there are other specific documents that you're

9   looking for, delineate them into a letter to Ms. Littman and

10  get that letter out in the next five days?  Is that fair?

11           MR. HUEBNER:  Need a little more time that, Your --

12  than that, Your Honor.

13           THE COURT:  How much time do you need?

14                      (Extended pause)

15           THE COURT:  Well, right now I'm talking about only

16  the --

17           MR. HUEBNER:  (Indiscernible) -- my --

18           THE COURT:  -- only -- sir?  Just so you know, --

19           MR. HUEBNER:  Yes.

20           THE COURT:  -- I'm only talking about the one issue.

21  The -- the issue regarding chain of title.  Whatever --

22           MR. HUEBNER:  Okay.  So --

23           THE COURT:  Whatever specific documents you don't

24  have, I'm just making a list at this point.  I want you to --

25  because I don't -- I am not -- it's not clear to me what they

1   have not produced.  So, if you have specific documents

2   regarding that issue they have not produced, I'll give you

3   whatever reasonable time you want to write a letter.  And that

4   may not -- that may not be the only subject to the letter

5   before we're finished today, but we'll see.  Okay?

6              MR. HUEBNER:  I got one chain of title.

7              MS. LITTMAN:  I just -- Your Honor, I just want to

8   clarify.  I believe it's in exhibit 1, not A, schedule A.

9              THE COURT:  Okay.  Exhibit 1.

10             MS. LITTMAN:  Just for clarification.

11             THE COURT:  Okay.  There is no schedule A.  Okay.

12             MR. HUEBNER:  I -- I misspoke.  I said schedule A.

13  I meant --

14             THE COURT:  No, it's not -- I don't -- it's okay.  I

15  just don't want to confuse the terms.  All right.  So that's --

16             MR. HUEBNER:  Thank you, Your Honor.

17             THE COURT:  -- that's that issue.

18             Computer coding -- you know what?  Let's go to

19  Federated.  You brought Federated up.  Let's go to Federated.

20             MR. HUEBNER:  Okay.  So --

21             THE COURT:  Now, let me -- before you -- before I

22  ask you, Mr. Huebner, to do anything, let me ask Ms. Littman.

23  Is your -- are you putting in advice of counsel -- or, it's

24  actually not advice of counsel, but are you putting in a

25  defense that -- that Federated did not do what you told it to

1   do or somehow there was a miscommunication between your client

2   and Federated?

3           MS. LITTMAN:  I believe we --

4           THE COURT:  I believe you have, but I want to

5   confirm that you did.

6           MS. LITTMAN:  So that, yes, that -- that the reason

7   for the reporting is that Federated did not report the account

8   to -- to my client correctly.

9           THE COURT:  Right.  Right.  All right.  So then

10  those -- and Federated is a law firm?

11          MS. LITTMAN:  Yes.  Yes.

12          THE COURT:  So, but those communications now are in

13  issue, so we understand that.  And I think you understand it,

14  because I believe that you have tried to turn over something,

15  but not as much as plaintiff's counsel is looking for.

16  Correct?

17          MS. LITTMAN:  Right.  We have -- as stated in our

18  letter, we produced the sole communication relating to

19  settlement.  And it was our position that any other

20  communications were not relevant and subject to the privilege,

21  attorney-client privilege.

22          THE COURT:  Are there any other communications --

23          MR. HUEBNER:  (Indiscernible) -- so that's --

24          THE COURT:  Wait, wait.  Let me finish.  Are there

25  any other communications between Federated and your client

1  regarding this consumer?

2               (Extended pause)

3          MS. LITTMAN:  I'd have to double -- double check

4  that.  Like I said, other than -- other than the one

5  communication that was produced regarding the lawsuit.  But

6  they would be privileged.

7          THE COURT:  Well, I -- and I understand you're going

8  to assert a privilege, but I think you're going to have to

9  prepare a log about those communications that you -- if there

10  are other communications between Federated and your clients

11  regarding this consumer, Ms. Sanders or Saunders [sic] -- let

12  me make sure.

13          Mr. Huebner, you want to see all the communications;

14  correct?

15          MR. HUEBNER:  Correct.

16          THE COURT:  Well, --

17          MR. HUEBNER:  This is the issue.  If they're -- if

18  they're saying it's a defense of -- first of all, what did

19  they hire Federated for?  How -- why -- on what basis did they

20  hire Federated?  They -- they don't -- I find it very

21  implausible.  They don't have any emails, no letters, and no

22  retainer.  The only -- they're saying that the only agree --

23  letter -- communication they have between them and Federated

24  is that Federated improperly communicated the settlement?

25          THE COURT:  Wait.

1          MR. HUEBNER:  So how did that -- did Federated get

2   hired in the first place?

3          THE COURT:  Well, all right.

4          MR. HUEBNER:  It's -- it's preposterous.  And how --

5   what basis --

6          THE COURT:  All right.  But (indiscernible) --

7          MR. HUEBNER:  -- did they hire them --

8          THE COURT:  All right.  But (indiscernible) --

9          MR. HUEBNER:  -- when there was a -- when the --

10          THE COURT:  Have you asked all those questions?

11   Have you asked those questions?

12          MR. HUEBNER:  Yes.  I have asked -- I asked for all

13   their communications with Federated and if they're saying a

14   bona fide defense, I really don't see where they have an

15   attorney-client privilege right now.

16          THE COURT:  No, but I mean we need to -- we need to

17   -- the -- they may or may not be required to give you all

18   communications with Federated.

19          MS. LITTMAN:  And, Your Honor, I would --

20          THE COURT:  There may be --

21          MS. LITTMAN:  Your Honor, I would just submit that

22   hiring practices, and which it addresses in a later [sic],

23   seem completely irrelevant to, again, the narrow issue of the

24   timing of reporting of the settlement and credit reporting

25   involving the plaintiff.

1          MR. HUEBNER:  So that goes back to the -- that goes

2    back to the -- that's a regular excuse of the defendant that

3    they want to unilaterally decide that everything is irrelevant

4    without giving a description about it.  Or saying it

5    disappeared, we don't have it, we'll give you an affirmation

6    [sic] it doesn't exist, even though it -- we -- we have

7    documents that say it exists, we have a --

8          MS. LITTMAN:  I think you're putting words --

9          MR. HUEBNER:  -- we have a -- a --

10         MS. LITTMAN:  -- in my mouth.  Sorry.

11         MR. HUEBNER:  -- an exhibit 1 --

12         THE COURT:  All right.  No, one at a time.

13         MR. HUEBNER:  (Indiscernible) --

14         THE COURT:  One a time.  We're on the record.

15         MR. HUEBNER:  -- I didn't interrupt you.

16         THE COURT:  One at a time.

17         MR. HUEBNER:  Please let me finish.

18         THE COURT:  Yeah, but here -- Mr. Huebner, --

19         MR. HUEBNER:  For example, that they say that

20   there's an --

21         THE COURT:  -- but let's -- let's -- but --

22         MR. HUEBNER:  -- that --

23         THE COURT:  Go ahead.  Go ahead.  Finish your --

24   that sentence, please.

25         MR. HUEBNER:  They say there's an exhibit 1, then

1   they say it disappeared, now they say that the -- that they

2   only had one communication with the -- with the -- with

3   Federated and everything else is privileged without discussing

4   when it was made and why it's privileged.  And without a

5   privilege log.  And they could have oppose -- and they could

6   have addressed those issues a long time ago and they didn't.

7   And it -- and it really seems to me that they have waived

8   those objections and they just have to turn it over.

9         And -- and -- and now I'm do -- I'm doing it again.

10  I mean, I -- we -- plaintiff really whittled down all of their

11  discovery demands, really whittled it down to five small

12  issues out of -- out of multiple discovery demands, which we

13  got another 22 pages of discovery from -- from -- from

14  defendant?  I -- I never had that in my life in a case like

15  this, 22 pages.

16        THE COURT:  Well, maybe I just don't have it in

17  front of me and I didn't understand this Federated thing, and

18  it was subject to -- how many questions -- I mean, what, are

19  they interrogatory quest --

20        MR. HUEBNER:  I had -- I had -- that's why I really

21  tried to narrow it down, but I had interrogatories that they

22  didn't -- we had -- plaintiff had interrogatories that -- that

23  they didn't respond to, plaintiff had -- had -- had document

24  demands that -- that --

25        MS. LITTMAN:  Your Honor, --

1        MR. HUEBNER:  -- they didn't respond to, and -- and -

2  - and -- and on each separate group.  And the -- the -- since

3  the -- since the defendant blames Federated Law Group, the law

4  firm that handled the settlement, that's subject to the FDCPA

5  violations, these examinations or communications would lead to

6  admissible evidence as to why -- why did Federated Law Group

7  consult with the defendants prior to settling the plaintiff's

8  debt and did they cease to employ Federated after committing

9  the malpractice alleged by the defendants?

10        And that -- all that time line is important.  So, if

11  -- if Federated was no longer working for them, then -- then --

12  then that's another issue about blaming Federated.  And so I

13  don't know, but I have nothing.  I have zero.  Zilch.  Nada.

14        MS. LITTMAN:  Your Honor -- Your Honor, as --

15        MR. HUEBNER:  (Indiscernible) which I already

16  produced.

17        THE COURT:  Yes, Ms. Littman?

18        MS. LITTMAN:  Your Honor, as stated in our -- in our

19  letter, document 75, the requests -- there are specific

20  document requests and interrogatory numbers, but they don't --

21  they don't mention the Federated group.  And as we've said, I

22  think -- you know, the relevant commune -- the door is open

23  here to all communications with Federated, but only the

24  relevant communications regarding the settlement matter.

25        THE COURT:  Well, I know, but they do get -- I'm not

1   sure that's entirely true.  They may be relevant

2   communications that are not going to fall within the privilege

3   with Federated regarding their client and what Federated was

4   doing on behalf of your client and what happened here because

5   a mistake was made by somebody.  They're entitled to chase

6   that down.

7           I do agree, based on my reading of these letters and

8   then -- and my perusal of the document demands that the

9   specific interrogatories and document demands may not have

10  gone directly to this issue in a roundabout way.

11          Mr. Huebner, my problem with some of your demands is

12  you can't just ask for all communications with a law firm and

13  then say you're entitled to everything or at least try to pick

14  and choose what you are entitled to.  I need to know what

15  you're looking for and why.  And -- and --

16          MR. HUEBNER:  So -- so, how did --

17          THE COURT:  -- (indiscernible) you need to --

18          MR. HUEBNER:  -- how did they determine that the --

19  the -- so, --

20          THE COURT:  (Indiscernible) --

21          MR. HUEBNER:  -- if -- if -- if -- if Federated --

22  if they -- if they're saying that Federated didn't communicate

23  properly, well, what is it that they didn't communicate

24  properly?  They haven't even furnished that.  They're saying

25  Federated failed to communicate to the defendant properly

1   about the settlement of the lawsuit.  Well, what is it that

2   Federated failed to com -- to communicate?  They didn't even

3   give that.

4            THE COURT:  I'm having -- I'm a little bit at a

5   loss, because I don't know whether to make you redraft your

6   interrogatories -- I am wondering if whether a deposition

7   would --

8            MR. HUEBNER:  Of documents?

9            THE COURT:  No, you know, --

10                       (Extended pause)

11           THE COURT:  All right.  Here's what I'm going to do

12  for now.  Ms. Littman, you -- I am going to order your client

13  to turn over all communications -- all written communications,

14  whether it's email or however they were recorded, between

15  Federated and your clients regarding Ms. Sanders.  But that is

16  -- by necessity, is going to have to include why were they

17  working on Ms. Sanders in the first place?  In other words,

18  what was their charge?  What were they retained for?

19           I am not turning over the retainer agreement right

20  now, but what I'm trying to do is understand the scope of

21  their involvement and -- and scope of the discovery that is

22  relevant to their involvement.

23           MS. LITTMAN:  Your Honor, are we permitted to --

24           THE COURT:  Let me finish.  Let me finish.  To the --

25           MS. LITTMAN:  Oh, sorry, Your -- sorry, Your Honor.

1          THE COURT:  If there's any of it you are going to

2    argue is privileged, then you have to do a privilege log on

3    those communications.  That's all.

4          MS. LITTMAN:  Yes, Your Honor.

5          THE COURT:  Then, after you get that, Mr. Huebner,

6    then you can -- if you need more specific written discovery

7    before we start depositions, then you can ask for it based on

8    that production.  Okay?

9          MR. HUEBNER:  Thank you, Your Honor.

10         THE COURT:  Now, backing up in document 75, CACH

11   consumers serviced by RCS.  Why do you need about all their --

12   why do you need information about their other consumers

13   serviced by RCS?

14         MR. HUEBNER:  I mean, this is a whole -- this is one

15   of the things that they're act -- CACH and -- and -- and --

16   and Resurgent are acting inappropriately and they're --

17   they're -- we believe that there was inappropriate actions (a)

18   regarding they have a bankruptcy lawsuit that they're saying

19   it means one thing or it means another thing than what we

20   understand it to mean.  Let them turn over the lawsuit.

21         They are saying that -- that -- that we're saying in

22   -- in our -- in our class action complaint that they did this

23   kind of same improprieties with other -- with other -- with

24   other plaintiffs that were initially their defendants.  That

25   they were claiming debt owed to -- the -- the same thing that

1    -- that law -- that litigation regarding other plaintiffs

2    against -- against them.  So we're entitled to that and we --

3    we limited it down.  So, we limited it down to -- to -- and we

4    -- we limited it down and we -- and we asked -- say where we

5    asked for it.

6            So we're entitled that information.  I mean, that we

7    believe it's a pattern and we believe it's a pattern and a --

8    and it -- and amounts to a class action and -- and -- and that

9    it'll -- this will lead to evidence disproving defendants'

10   defenses.

11           They purportedly settled a debt for a thousand

12   dollars, but they went into bankruptcy.  Well, if they went

13   into bankruptcy, who had the right?  Usually, when there's a

14   bankruptcy the debt is stayed.  If the debt is stayed, if all

15   the assets you're -- if there's a stay in the bankruptcy, then

16   they -- they can't just go around and hide and then -- then

17   have a power of attorney and then it's another fraud.  They're

18   hiring someone else to go after a debt that was stayed, that

19   belongs to the state of the trustee of the bankruptcy and so

20   that's another impropriety.  I don't know, maybe that is.

21           THE COURT:  I mean, (indiscernible) --

22           MR. HUEBNER:  I -- I don't have the document.

23           THE COURT:  (Indiscernible) --

24           MR. HUEBNER:  I think that it could

25           THE COURT:  Are you alleging -- and forget all these

1   other people who may or may not be part of a putative class.

2   Are you alleging that they -- they compromised a debt from Ms.

3   Sanders while they were in bankruptcy?

4          MR. HUEBNER:  I'm alleging it was that they're in vi

5   -- collected the debt in violation of the FDCPA and -- and --

6   and the complaint has a -- has a broad strokes.  And now that

7   I'm getting discovery, now that things are coming out, it

8   seems like there's other improprieties.  And that seems to be

9   one of the improprieties.

10         And -- and -- and if I may, I believe that we did

11  address any -- anyway, we asked for that in the discovery

12  demands and --

13                      (Extended pause)

14         MR. HUEBNER:  Also, --

15         THE COURT:  Yeah, but --

16         MR. HUEBNER:  -- they did it -- we said that they

17  did it through a bankruptcy proceeding.  If they acquired it,

18  how did they acquire it and did they have the right to acquire

19  it?  We allege that in -- in our complaint.  And we raise the

20  issue of that they did it -- they acquired the business in a

21  bankruptcy proceeding.  Whether that was appropriate or not

22  and whether they acquired it according -- in violation of the

23  stay or not.

24         THE COURT:  I thought defendant answered that

25  question that the bankruptcy proceeding was nothing more than

Colloquy                                    28

1    a change of ownership of the company itself.  That the assets

2    -- the -- their -- their --

3              MR. HUEBNER:  That's what they say, --

4              MS. LITTMAN:  Your Honor, --

5              THE COURT:  Yeah, they say --

6              MR. HUEBNER:  -- but there (indiscernible) --

7              THE COURT:  -- (indiscernible) they gave you

8    information from the bankruptcy case.

9              MR. HUEBNER:  They -- they didn't -- they -- I don't

10   -- I don't know what documents they gave that verified that.

11   I don't know why they didn't give me the bankruptcy case.  Let

12   me get the bankruptcy case.

13             MS. LITTMAN:  I mean, we've previously provided --

14   and we referred to it in the papers -- the bankruptcy order

15   that addresses this.

16             MR. HUEBNER:  It was a stay earlier.  When was the

17   stay?  You don't address that.  There -- there was a stay in

18   the bankruptcy proceeding.  I'm entitled to that.

19             MS. LITTMAN:  But I think this is getting --

20             MR. HUEBNER:  We're entitled to that.

21             THE COURT:  You want her to tell you if there's a

22   stay in a bankruptcy proceeding?

23             MR. HUEBNER:  No, I -- I'm entitled.  That's one of

24   my allegations in the complaint.  If the bank -- I believe

25   that they collected the debt in violation of the stay.  I

Colloquy                                    29

1   believe that this was a shell game.  That they took CACH --

2   Resurgent took CACH's assets, which were stayed in the

3   bankruptcy proceeding, and while there was a stay they used

4   Resurgent as a -- as a front with a -- with a power of

5   attorney inappropriately to -- to -- to -- to pursue assets

6   which they weren't entitled to pursue.  And that --

7               THE COURT:  Well, that --

8               MR. HUEBNER:  -- that's not -- that's another

9   problem.

10              THE COURT:  Well, I am asking you if you know -- I

11  mean, you should know, shouldn't you, whether or not what

12  happened to your client happened while CACH was in bankruptcy.

13  You -- I mean, you don't know the dates of the bankruptcy

14  proceeding?  You don't know when they went in?  When they came

15  out?  That would tell you the limitations of the stay.  You

16  don't know when she made her deal with Federated?

17              MR. HUEBNER:  But I didn't know that before I -- I

18  wrote -- how would I know all that before I wrote the

19  complaint, Your Honor?

20              THE COURT:  Well, no.

21              MR. HUEBNER:  How --

22              THE COURT:  Well, --

23              MR. HUEBNER:  How will I know if there's -- it's a --

24  it's a -- it's a --

25              THE COURT:  (Indiscernible) --

Colloquy                                         30

1          MR. HUEBNER:  -- it's a large -- it's a big docket.

2     I'm -- I'm only getting what I got information from the --

3     from the -- general information from the docket, Your Honor.

4     I allege --

5          THE COURT:  No.

6          MR. HUEBNER:  -- it in the complaint.

7          THE COURT:  (Indiscernible) that --

8          MR. HUEBNER:  It's not like I didn't allege it.

9          THE COURT:  Even if you didn't (indiscernible) --

10         MR. HUEBNER:  I don't have to know the discovery

11    before I -- if I didn't -- if I knew the answer, --

12         THE COURT:  (Indiscernible) --

13         MR. HUEBNER:  -- I wouldn't ask for the discovery.

14         THE COURT:  -- (indiscernible) you're not following

15    my question.  We've been doing this for (indiscernible) --

16         MR. HUEBNER:  I apologize.

17         THE COURT:  (Indiscernible) now know -- you now know

18    that there was a bankruptcy.  You have the docket number for

19    the bankruptcy, I believe.  If not, I mean, (indiscernible) --

20         MR. HUEBNER:  Right.  The bankruptcy was filed in

21    March of 2017.  All right?  They began collecting against my

22    client in 2017.  All right?  I don't know -- I don't know when

23    that was -- I don't know when that was -- when that -- when --

24    about that whole bankruptcy and when it was resolved and how

25    it was resolved, and if it was resolved in -- in -- and -- and

1    if they were doing a -- if they were collecting on a -- using

2    Resurgent as a front to collect on a debt that they weren't

3    entitled to.

4          But that's what I believe and that's one of the

5    reasons why I have the allegations in the complaint.  Let them

6    give me the -- the -- the -- it's their documents.  Let them

7    give it to me.  I asked for it.  I'm entitled to it.  It's not

8    like I don't have a good faith basis for it.  And it's not

9    appropriate for them to just say we decided it's irrelevant.

10          THE COURT:  I --

11                    (Extended pause)

12          MR. HUEBNER:  And when they reported the debt, they

13   didn't report it as a power of attorney -- Resurgent as power

14   of attorney for CACH, they reported it as CACH.  As -- as

15   Resurgent.  So that -- that's another issue.  I mean, it just

16   goes on and on and on.  They got to get their house together.

17   And -- and it's not my fault.

18          THE COURT:  Okay.  So, we were focusing on a list of

19   CACH consumers that were serviced by Resurgent Capital

20   Services.  And you want that list --

21          MR. HUEBNER:  Also correct, yes.

22          THE COURT:  You want that list because -- because of

23   the class action allegations in your complaint; correct?

24          MR. HUEBNER:  Correct.  Correct.

25          THE COURT:  You want them to identify the size of

1    the putative class.

2              MR. HUEBNER:  Correct.

3              THE COURT:  But all of this -- all of this is tied

4    to whether or not -- well, you're suggesting that they have

5    compromised other debts and then tried to collect them?

6    That's part of the claim.

7              MR. HUEBNER:  Correct.

8              THE COURT:  Do you have any evidence of that

9    whatsoever, other than Ms. Sanders?

10             MR. HUEBNER:  Not just that they comp -- they

11   collected, they compromised and collected, it's that -- that

12   they were collecting when there was a stay in the bankruptcy

13   and that's why the bankruptcy is also all related.  And -- and

14   -- and I --

15             THE COURT:  But that's (indiscernible) --

16             MR. HUEBNER:  -- and I don't have to have --

17             THE COURT:  But -- but (indiscernible) --

18             MR. HUEBNER:  -- besides my client, that's -- once

19   your plaintiff, she's addressing as a putative class, and once

20   she addresses that, I -- I have the right to ask for that in

21   the -- in the discovery demands.  That's how we get class --

22   class discovery.  And then, based on their behavior, I do

23   believe that -- that -- that -- that that was one of the

24   things that occurred.

25             THE COURT:  Well, would (indiscernible) --

1          MR. HUEBNER:  It's not just on -- on --

2          THE COURT:  -- (indiscernible) --

3          MR. HUEBNER:  -- the FDCPA, it's also on Fair Credit

4   Reporting Act violations.  If -- if -- if Resurgent reported

5   other -- other people's debt when it was really a CACH debt,

6   then that's related to the same cause of actions that I have

7   in the -- in the complaint, Your Honor.

8          THE COURT:  All right.  Hold on.  I'm looking at

9   something myself on the docket.

10          MR. HUEBNER:  Thank you, Your Honor.

11          THE COURT:  Mm-hmm.

12                    (Extended pause)

13          MR. HUEBNER:  And in the amended complaint, Your

14   Honor, and that's particularly paragraphs 37 through 46, Your

15   Honor.

16          THE COURT:  Okay.

17          MR. HUEBNER:  Where I address all of those

18   allegations.

19                    (Extended pause)

20          THE COURT:  Well, you do have allegations of

21   bankruptcy in your second amended complaint.  You don't

22   necessarily state that trying to collect while they're in

23   bankruptcy creates some kind of Fair Debt Collection Practices

24   Act violation or is otherwise actionable.  There may be a

25   violation of the stay.  It may or may not be, depending on

1  what the -- whether this was a Chapter 11, whether there was a

2  trustee appointed, or whether or not they were debtor-in-

3  possession.  I mean, I don't -- there's a number of issues

4  that might be involved that would have okayed Resurgent

5  operating on behalf of CACH during the bankruptcy.

6          That's not to suggest -- I am not -- don't

7  misunderstand me.  I am not suggesting they can misrepresent a

8  status of a debt or anything like that, or try to collect a

9  debt that they already compromised, but in and of itself,

10 whether or not that's actionable is unclear to me.

11         All of this goes back to what we're trying to do

12 here in this discovery and -- and essentially though, if I

13 understand it correctly, all the arguments notwithstanding,

14 you need -- you're looking for a list of putative plaintiffs.

15 Putative class members, I should say.  That's what -- that's --

16 there's no other reason for this list.  Correct?

17         MR. HUEBNER:  But we did -- we're also conflating --

18 because we were talking about the bankruptcy document and

19 whether that's relevant, and the bankruptcy documents would

20 shed light on the -- the list of consumers.  And if -- if --

21 if -- and it's in the complaint.  If CACH, who had authority,

22 if they were a party properly, well, if -- that's another cap

23 -- that's another relevant issue.  If -- if Resurgent wasn't

24 reporting that the debt is actually owned by CACH and it's

25 only owned by Resurgent, and it -- and -- I mean, if -- I

1   think if that -- if Resurgent was not reporting the debt is

2   owned by CACH and they're only acting as power of attorney,

3   then that's another issue, that's another violation of

4   consumers' rights under the FDCPA.  And -- and that's why

5   we're entitled to the -- that -- those lists of putative --

6   putative class members, because then that -- well, that's an

7   issue.

8            THE COURT:  Well, (indiscernible) --

9            MR. HUEBNER:  Because if they went and did that same

10  thing --

11           THE COURT:  I don't (indiscernible) --

12           MR. HUEBNER:  -- with everybody, then --

13           THE COURT:  That's the (indiscernible) --

14           MR. HUEBNER:  -- then that's a violation.

15           THE COURT:  I do not know that one leads to the

16  other.  You may be entitled to some more information than you

17  currently have.  Whether or not you've properly asked for it,

18  I don't know.  I can't figure this out.  But just because you

19  need information or you're -- or you're entitled to

20  information regarding how Resurgent did business, how CACH did

21  business with Resurgent, and when they did this business, and

22  what happened with the mistakes that were made in this case,

23  none of that implies that you're entitled to a list of all

24  CACH's consumers.  That -- that's -- they're not related.  The

25  only --

1        MR. HUEBNER:  I didn't say all, I said the -- I said

2  for a period of -- of -- I said for -- I limited, I believe,

3  to a period of -- a period of time.

4        THE COURT:  Yeah, but I don't know, even by

5  limitation by time, the requirements for the list would be

6  more related to numerosity and typicality.

7        MR. HUEBNER:  And that really, how long -- I mean,

8  how long is Resurgent acting on behalf of -- how long is

9  Resurgent acting on behalf of CACH?

10        THE COURT:  Well, let's get those questions answered

11  first, don't you think?

12        MS. LITTMAN:  Your Honor, I -- may I --

13        THE COURT:  Yep, it's your turn --

14        MS. LITTMAN:  -- make a couple things --

15        THE COURT:  It's your turn.

16        MS. LITTMAN:  Your Honor, a couple things.  During

17  the last conference, Your Honor ordered that if plaintiff was

18  going to pursue a class she was to produce the retainer

19  agreement with her counsel.  She has not done that.

20        MR. HUEBNER:  But that was if -- that was if it was

21  a class action.  That was if there was -- if we were -- if we

22  moved for a class -- if we moved for class certification.  If

23  we were moving for class certification of discovery pursuant --

24  prior to moving for class certification it doesn't mean that

25  we're moving for class certification.

Colloquy                                    37

1          MS. LITTMAN:  Your Honor, the --

2          MR. HUEBNER:  Maybe discovery would entitle --

3   entail that we don't need class certification and we're not

4   going to move for class certification.

5          MS. LITTMAN:  Your Honor, then maybe you could

6   clarify.  I understood your order to be that they were to

7   produce -- plaintiff was to produce in discovery her retainer

8   agreement with counsel if she was going to be continuing with

9   her class claims.

10          THE COURT:  Did I -- it was in a written order?

11          MR. HUEBNER:  No, Your Honor said it -- if it was

12   move -- if they were moving -- Your Honor said if they were

13   moving for class certification, then that would be -- they'd

14   have to come up with the retainer.  If they're not moving for

15   class certification, they wouldn't have to come up with the

16   retainer.  And that was in a motion for class certification.

17   We didn't make a motion for class certification, Your Honor.

18   We haven't gotten discovery.  We haven't even gotten minimal

19   discovery, let alone class discovery.

20          MS. LITTMAN:  I would also submit, Your Honor, that

21   -- well, I -- I didn't understand it that way at the

22   conference, but also just -- plaintiff asking for just a list

23   of people, with no specifications, no parameters, just even a

24   -- you know, he'd say, oh -- gives a date range, and the date

25   range is only one year back under the FDCPA, this -- that is --

1  that is not a request for a class.  It's completely over broad

2  and not specific at all.  And it's -- it's just a list of

3  names just mainly for a fishing expedition.

4         As, you know, counsel has indicated, they don't -- I

5  believe they don't have any information of anyone having a

6  similar type of claim to the plaintiff involving with this

7  timing of credit reporting.

8         THE COURT:  I -- I --

9         MR. HUEBNER:  Your Honor, if I may?

10         THE COURT:  All right.  Last time on this one.

11         MR. HUEBNER:  I'm sorry.

12         THE COURT:  Go ahead.  No, just the last time.  Go

13  ahead.  Go ahead.

14         MR. HUEBNER:  So, defendant Resurgent has a

15  purported power of attorney saying that they're entitled to

16  take actions on behalf of CACH.  It doesn't say that they were

17  assigned the debt of CACH, it said they're act -- act --

18  entitled to take certain actions to secure CACH's rights.  It

19  doesn't say (inaudible) it.  So, if they're reporting --

20  Resurgent went and reported the debt.  Resurgent didn't say

21  they're not the debt holder and CACH is the debt holder.

22         Resurgent said that they're the -- that they're the

23  creditor.  So, our allegation -- and that's what we said in

24  the complaint -- that Resurgent was improperly acting in the

25  name of CACH, without notifying consumers that Resurgent is

1   not the real alleged creditor and that -- and that CACH is the

2   real alleged creditor.  And if they did that, every time they

3   did that, that would be a violation of the FDCPA.

4           So, there's clear good faith basis for all of the

5   allegations that are in plaintiff's complaint (a) by

6   defendants' actions and (b) by the very minimal discovery that

7   they've turned over.  And the discovery they've turned over

8   doesn't show that the debt was assigned to Resurgent.  And

9   right away that in itself is on its face is -- is -- what they

10  did -- Resurgent -- what they did is a violation of my

11  client's rights.  And it's the same thing that they did with

12  other people.  Well, how am I going to know that that --

13  whether that happened or not if they don't give me the -- the

14  list?

15          THE COURT:  I don't know.  This is very close.  I

16  don't -- I'm not feeling warm and fuzzy about your request for

17  this list of people who you can I guess go talk to then, like

18  a list of witnesses and/or potential plaintiffs or putative

19  class members who you could talk to, to find out if they have

20  similar claims.  I don't think that's the way to do this on a

21  number of -- for a number of reasons.

22          I'm going to reserve on the list thing.  I want to

23  give that some more thought.

24          Here's -- I'm having a logistical issue.  I have to

25  get off in five minutes, because I have a bail hearing, so I

1   want to deal with one more issue, and then I'll either just

2   issue something written on the other issues here or I'll bring

3   us back together as soon as I can do that.

4           And let's -- the easier one I think is the lawsuits.

5   You're asking for all lawsuits.  I mean, that's just way too

6   broad.  I, frankly, in the ten years I've been doing this job

7   and in the years I've practiced law before I took this job, I

8   hated questions, I hated asking them, I never understood it,

9   but attorneys seem to always do it, asking for all the

10  lawsuits filed against your client or all the lawsuits your

11  client has filed.  I have never seen it, in ten years on this

12  job, result in any type of useful discovery that anybody used

13  in a motion or in a trial.  I don't understand why it's asked.

14          If you want to ask for lawsuits similar to the ones

15  Ms. Sanders has filed, on a limited basis, I will allow that.

16          MR. HUEBNER:  Bankruptcy litigation, Your Honor.

17          THE COURT:  What about bankruptcy litigation?  What

18  do you mean by that?

19          MR. HUEBNER:  I asked for the bank -- I asked for

20  the underlying -- I asked for the documents in the bankruptcy

21  litigation that CACH had.

22          THE COURT:  No, that's not what I'm --

23          MR. HUEBNER:  So that I can get a full explanation

24  of what occurred in that.

25          THE COURT:  No, well, that's not what I'm talking

1    about right now.  If you -- first of all, let's back up.

2                MR. HUEBNER:  That (indiscernible) --

3                THE COURT:  If you want documents in the bankruptcy

4    litigation, I am not going to require them to turn over

5    everything that was filed in bankruptcy.  That -- I don't know

6    how big that file is or how small it is, I don't know how wide-

7    ranging it is.  You can -- they can give you the -- they should

8    give you the -- the document -- the ECF numbers so you can go

9    peruse the -- go on PACER -- the file yourself.  To the extent

10   there seems to be documents that are indicated on PACER that

11   are not on the docket, you can request that from counsel and

12   hopefully that will be turned over.

13               But I'm not going to have them just turn over the

14   entire bankruptcy file.  I never would have done that.  I

15   never do that.  You've got to go on PACER.  If you don't have

16   the appropriate litigation -- information, then Ms. Littman

17   will give it to you.

18               MS. LITTMAN:  Yes, Your Honor.  And the confirmation

19   order I believe has been docketed in this case as well.  I

20   believe Docket Number 23-1.

21               THE COURT:  Okay.  But I was talking about lawsuits

22   -- you asked -- and maybe I misunderstood and maybe you didn't

23   ask for this.  I thought you wanted all lawsuits filed by and

24   against CACH and Resurgent.

25               MR. HUEBNER:  Yes.

1            THE COURT:  Well -- well --

2            MR. HUEBNER:  From 2015, yes.

3            THE COURT:  Yeah, but I -- all right.  Why 2015?

4   Why not 2016?  This happened to your client in 2017.  I'm

5   willing to go back a little bit, but I don't know why 2015 is

6   important, unless you've told me and I skipped over it or you

7   want to tell me now.

8            MR. HUEBNER:  (Indiscernible; volume barely audible.)

9            THE COURT:  But these are lawsuits filed against

10  Resurgent and/or CACH that are --

11           MR. HUEBNER:  -- or vice versa.

12           THE COURT:  What does that mean?  Vice -- I don't

13  know what you mean by that, vice versa.

14           MR. HUEBNER:  That -- that defendants commenced --

15  I'm also asking for the lawsuits the defendants commenced.

16  Because the -- what they did, they commenced a lawsuit against

17  my client and I -- and it's my -- it's my -- and -- and -- and

18  it's --

19           THE COURT:  Yeah, but no, no.  Yeah, that -- wait.

20  That's too far.  Mr. Huebner, that's too much.  That's too

21  much.  They probably commenced thousand -- I mean, that's --

22  they're in the business of commencing lawsuits to collect.

23  That's too much.

24           What you really are interested in is how many people

25  sued them for trying to collect a debt twice.  That's what you

Colloquy                                          43

1   want to -- or more than twice.  That's what you want to know.

2              MR. HUEBNER:  More than --

3              THE COURT:  Those lawsuits that would be similar,

4   that would --

5              MR. HUEBNER:  -- (indiscernible) --

6              THE COURT:  -- (indiscernible) that you're concerned

7   about.  Okay?

8              MR. HUEBNER:  Okay.  Okay.

9              THE COURT:  All right.  Ms. Littman, you'll see what

10  you have on that and how your client -- I don't know what that

11  entails, but --

12             MS. LITTMAN:  Your Honor, you're -- you're just -- I

13  just want to clarify.  Lawsuits that were filed against my

14  clients alleging similar claims to Ms. Sanders.  And is there

15  -- can we put a time limit on it?

16             THE COURT:  January 1, 2016 through December 31st,

17  2017.

18             MR. HUEBNER:  So -- so, Your Honor, I think what

19  they really should be giving me is a list of lawsuits

20  commenced against them, because the -- for them to decide that

21  -- that -- that this -- they're going to decide -- they're

22  going to look at it and they'll say this -- all these lawsuits

23  -- here -- there was a bunch of lawsuits filed, nothing amount

24  -- nothing having -- have to do anything similar with this

25  case.  So they're going to be unilaterally --

1             THE COURT:  No, no.

2             MR. HUEBNER:  -- the judge, the jury and the -- and

3  the -- and -- and --

4             THE COURT:  I cannot -- I cannot --

5             MR. HUEBNER:  -- and the executioner on deciding

6  whether those lawsuits had anything to do with this.

7             THE COURT:  Mr. Huebner, I am not going to do that.

8  I'm not going to --

9             MR. HUEBNER:  And were similar to this situation.

10            THE COURT:  Mr. Huebner, I am not going to do that.

11 I am not going to believe that counsel would totally disregard

12 my order and --

13            MR. HUEBNER:  I didn't say counsel would.  What I

14 said was that their clients would.

15            THE COURT:  Well, here -- but they have counsel.

16 That's her job, to make sure that she gets the appropriate

17 list of lawsuits where similar claims -- and I think that it's

18 pretty easy.  These aren't difficult.  We're talking about

19 claims where the -- where your -- her clients asserted a claim

20 against somebody that they've already compromised.

21            MS. LITTMAN:  Right.

22            THE COURT:  That's (indiscernible) --

23            MR. HUEBNER:  Part of -- and the bank -- there's a

24 bankruptcy issue here, Your Honor, that they -- that -- that --

25 that -- that they were doing it --

1          THE COURT:  That's a --

2          MR. HUEBNER:  -- in violation, because --

3          THE COURT:  We'll get to that.  That's a different

4   issue and we'll get to that after you review the bankruptcy

5   documents.

6          MS. LITTMAN:  Your --

7          THE COURT:  They (indiscernible) --

8          MS. LITTMAN:  Your --

9          MR. HUEBNER:  That's fine.  Thank you.

10         THE COURT:  -- least authority -- they might --

11         MR. HUEBNER:  Thank you, Your Honor.

12         THE COURT:  -- have complete authority -- complete --

13  complete authority in the bankruptcy case to assert claims

14  against the whole world.  I don't know.  We'll see.

15         MS. LITTMAN:  Your -- Your Honor, I'm sorry, could

16  you just please clari -- or I just want to make sure I have

17  the exact terms of the list that you're ordering my clients to

18  produce and the time frame, because I wasn't sure, because of

19  what Mr. Huebner (indiscernible) --

20         THE COURT:  Well, I'm not going to draft the

21  interrogatory, but I will tell you this.  Claims similar to

22  the ones filed by Ms. Sanders in this case.  And the Court

23  understands that to be claims --

24         MS. LITTMAN:  Oh, Your --

25         THE COURT:  -- where your clients tried to collect

1  on a debt which they had already compromised.

2         MS. LITTMAN:  All right.  I -- I understand that,

3  Your Honor.  I -- I was confused though then Mr. Huebner was

4  saying he wants lawsuits where my clients file -- or I'm --

5  I'm not searching for laws -- any lawsuits that my clients

6  have filed --

7         THE COURT:  No, no, only --

8         MS. LITTMAN:  Okay.

9         THE COURT:  -- claims against --

10         MS. LITTMAN:  Thank you.

11         THE COURT:  -- your client.  Lawsuits --

12         MS. LITTMAN:  Okay.  Thank you.

13         THE COURT:  Lawsuits --

14         MS. LITTMAN:  Thank you.

15         THE COURT:  -- against your client.

16         MS. LITTMAN:  I understand.

17         THE COURT:  I have to (indiscernible) --

18         MS. LITTMAN:  And the date range is -- is 2016 to --

19         THE COURT:  And to 2017.  Both calendar years.

20         MS. LITTMAN:  Okay.  Got -- I -- understood.  Thank

21  you, Your Honor.

22         THE COURT:  All right.  Counsel, I have to sign off

23  now.  I will resume this as soon as I can, and/or issue

24  writings on the other issues.  Okay?

25         MS. LITTMAN:  Thank you, Your Honor.

1          MR. HUEBNER:  You mean the other letter -- my letter

2   regarding the redaction items.

3          THE COURT:  Yeah, there's not only that, but you're

4   talking -- you had a coding issue here which I'm going to have

5   to look at.  Computer coding.  I think she answered the

6   computer coding issue, but my guess is you're not going to be

7   satisfied with her answer, so I'm going to take another look

8   at it.  And, yeah, and your letter regarding the manual.

9          MS. LITTMAN:  Yes, Your Honor.

10          THE COURT:  The manual itself, well, I will say

11   this.  I thought Mr. Huebner or Mr. Katz, in Mr. Huebner's

12   name -- you know, I've got the same issue here.  You know, I'm

13   getting letters from Mr. Katz, but it's really Mr. Huebner

14   talking, so, you know, I would be careful about how I cast

15   aspersions about Resurgent and CACH.  That's tongue-in-cheek.

16   That's all tongue-in-cheek.

17          MR. HUEBNER:  All fine, Your Honor.

18          THE COURT:  But listen.  Mr. Huebner I thought made

19   some good points about some of the sections that he was

20   speculating on might contain relevant information.  So, Ms.

21   Littman, --

22          MS. LITTMAN:  There's -- there is one section, Your

23   Honor, I just wanted to clarify, the plaintiff said was not

24   produced in full, but it was.

25          THE COURT:  Well, I don't care about that.  I don't

1  care about that.

2          MS. LITTMAN:  Okay.  Okay.  Okay.

3          THE COURT:  Corrections are corrections.

4          MS. LITTMAN:  Okay.

5          THE COURT:  But he mentioned I think three other

6  sections -- and I really need to get out of here -- three

7  other sections that I think you ought to take a second look

8  at.  And if you cannot agree with me that it's worth taking a

9  look at, then write a letter as to why those three sections he

10 mentioned in his letter should not be produced.  Okay?

11         MS. LITTMAN:  Thank you.  How --

12         THE COURT:  I think it's three.  There might be two,

13 but I think it's three.

14         MS. LITTMAN:  Okay.  Could we have a week or so to

15 write that letter?

16         THE COURT:  Yes.

17         MS. LITTMAN:  Okay.  Thank you.

18         THE COURT:  Because, frankly -- again, I'll say

19 this.  I'm uncomfortable making her turn over the whole

20 manual.  And I'm sure there is a lot of irrelevant --

21         MR. HUEBNER:  Confidentiality order.  They lose

22 nothing.

23         THE COURT:  This seems -- this is close.  This is a

24 close call, Mr. Huebner.  I get it.  I understand your

25 argument.  I get it.  But this is a close call.  This is not

1   like you're not in the business --

2            MR. HUEBNER:  How do I know what they're saying --

3   then they're going to say it's irrelevant, --

4            THE COURT:  It's (indiscernible) --

5            MR. HUEBNER:  -- that doesn't apply, and then --

6            THE COURT:  You are --

7            MR. HUEBNER:  -- they're going to decide my lawsuit.

8            THE COURT:  Here's (indiscernible) --

9            MR. HUEBNER:  And what's relevant or not.

10           THE COURT:  Email me the manual under seal.  Okay?

11           MS. LITTMAN:  Yes.  Do you want -- you mean email

12  the -- the -- the --

13           THE COURT:  *In camera*.  Not (indiscernible) --

14           MS. LITTMAN:  -- the one we --

15           THE COURT:  *In camera*.  Email me the manual *in*

16  *camera*.

17           MS. LITTMAN:  *In camera*.  Yes, Your Honor.

18           THE COURT:  So I can -- because I haven't seen it.

19  Let me take a look --

20           MS. LITTMAN:  And then --

21           THE COURT:  -- at it and let me see what she says.

22  Okay?

23           MS. LITTMAN:  -- do you still want me to write the

24  letter then or --

25           THE COURT:  I want you --

1          MS. LITTMAN:  -- do you want to --

2          THE COURT:  -- to review those three sections and

3   see how much you -- information you can give Mr. Huebner --

4          MS. LITTMAN:  Okay.

5          THE COURT:  -- after hearing what his arguments are.

6   I think there is --

7          MS. LITTMAN:  Yes.

8          THE COURT:  -- some merit to his arguments, but --

9          MS. LITTMAN:  Yes.

10         THE COURT:  -- I haven't seen those sections either.

11         MS. LITTMAN:  Yes, Your Honor.  And then is the

12  letter, I'm sorry, going to the Court or to Mr. Huebner?

13         THE COURT:  No.  If you can agree to give it to Mr.

14  Huebner, I don't need a letter.

15         MS. LITTMAN:  Oh, okay.  Okay.  Got it.  If we --

16  okay.

17         THE COURT:  All right?

18         MS. LITTMAN:  Understood, Your Honor.

19         THE COURT:  All right.

20         MR. HUEBNER:  I just want one last -- just to ask a

21  question just to make sure.  I'm writing a letter to Ms.

22  Littman -- because I thought I was writing it down, but I

23  looked -- it skipped over here.  We're writing a letter to Ms.

24  Littman about --

25         THE COURT:  The specific documents that you're

Colloquy                                          51

1    seeking regarding the chain of title issues, the exhibit 1 and

2    things like that.  Okay?

3              MR. HUEBNER:  Thank you, Your Honor.

4              MS. LITTMAN:  Thank you very much, Your Honor.

5              THE COURT:  Thank you (indiscernible) --

6              MS. LITTMAN:  Have a good day.

7              THE COURT:  All right.

8                    (Conference recording concluded.)

9                    * * * * * * * * * *

10                  C E R T I F I C A T I O N

11         I, TERRY L. DeMARCO, court-approved transcriber,

12    certify that the foregoing is a correct transcript from the

13    electronic sound recording of the proceedings in the above-

14    entitled matter recorded on October 28, 2020.

15         Due to the COVID-19 pandemic and court shut down,

16    the audio recording was provided as an MPEG-4 audio file

17    rather than the official Liberty Digital Court Recorder

18    digital file.  The MPEG-4 audio file does not have time

19    stamps, nor is there the ability for isolation of

20    microphones/speakers for a clearer record.

21

22

23    ___11/12/20___                    *S / Terry L. DeMarco*

24        Date                          Terry L. DeMarco, AD/T 566

25                                       KLJ Transcription Service