## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**KAUFMAN DOLOWICH & VOLUCK, LLP**
BY    RICHARD J. PERR, ESQUIRE
      MONICA M. LITTMAN, ESQUIRE
      GRAEME E. HOGAN, ESQUIRE
Four Penn Center
1600 John F. Kennedy Blvd., Suite 1030
Philadelphia, PA 19103
Telephone: (215) 501-7002
Facsimile: (215) 405-2973
rperr@kdvlaw.com; mlittman@kdvlaw.com; ghogan@kdvlaw.com
**Attorneys for Defendants CACH, LLC and Resurgent Capital Services, L.P.**

| | | |
|---|---|---|
| LARA M. SANDERS, on behalf of herself and all other similarly situated consumers | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 2:19-cv-00996- JXN-JSA |
| CACH, LLC and RESURGENT CAPITAL SERVICES, LP | : | |
| Defendants | : | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ..............................................................................1

STANDARD .....................................................................................3

ARGUMENT ....................................................................................4

    I.      PLAINTIFF LACKS STANDING. ....................................................4

    II.     BONA FIDE ERROR DEFENSE PREVENTS LIABILITY
          FOR THE CLAIMED VIOLATIONS OF § 1692e...........................6

    III.    NO EVIDENCE OF ACTUAL DAMAGES TO SUPPORT
          A NEGLIGENT VIOLATION OF § 1681s-2(b) ..............................9

    IV.    NO EVIDENCE OF WILLFUL OR RECKLESS
          BEHAVIOR IN VIOLATION OF THE FCRA ................................12

    V.     RECORD IS DEVOID OF EVIDENCE TO SUPPORT
          A VIOLATION OF § 1681s-2(b) .......................................................13

CONCLUSION ................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................3

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)...........................................................7

*Canadian Nat'l Ry. V. Vertis, Inc.*,
811 F. Supp. 2d 1028 (D.N.J. 2011) ...........................................10

*Carr v. Gillis Associated Industries, Inc.*,
227 Fed. App. 172 (3d Cir. 2007)................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................... 3, 4

*Cortez v. Trans Union, LLC*,
617 F.3d 688 (3d Cir. 2010)..........................................................12

*Farren v. RJM Acquisition Funding, LLC*,
2005 U.S. Dist. LEXIS 15230 (E.D. Pa. July 25, 2005)................... 14, 15

*Gebhardt v. LJ Ross Assocs.*,
2017 U.S. Dist. LEXIS 90252 (D.N.J. June 12, 2017)........................ 7, 8

*Grossman v. Barclays Bank Del.*,
2014 U.S. Dist. LEXIS 20149 (D.N.J. Feb. 14, 2014) ...........................15

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
716 F.3d 764 (3d Cir. 2013)..........................................................3

*Hassell v. Centric Bank*,
2020 U.S. Dist. LEXIS 120586 (M.D. Pa. July 6, 2020) ........................11

*Huertas v. Galaxy Asset Management*,
641 F.3d 28 (3d Cir. 2011)............................................................13

## TABLE OF AUTHORITIES (cont'd)

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
559 U.S. 573 (2010).................................................................................. 7, 8

*Johnson v. Riddle*,
443 F.3d 723 (10th Cir. 2006)......................................................................7

*Kleyweg v. Bank of Am., N.A.*,
2017 U.S. Dist. LEXIS 19046 (N.D. Ind. Feb. 10, 2017) ........................11

*Kort v. Diversified Collection Servs., Inc.*,
394 F.3d 530 (7th Cir. 2005)..................................................................... 7, 8

*Lewis v. ACB Bus. Servs., Inc.*,
135 F.3d 389 (6th Cir. 1998)........................................................................7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).....................................................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
475 U.S. 574 (1986).....................................................................................3

*Mercedes v. Wells Fargo Home Mortg. Inc.*,
2015 U.S. Dist. LEXIS 12215 (D.N.J. Feb. 3, 2015) ..............................15

*Morgan-Hicks v. N.J. Dep't of Corr.*,
2020 U.S. Dist. LEXIS 73460 (D.N.J. Apr. 24, 2020 ................................4

*Owner-Operator Independent Drivers Assn., Inc. v. U.S. Dept. of Transp.*,
879 F.3d 339 (D.C. Cir. 2018) .....................................................................5

*Parker v. Pressler & Pressler, LLP*,
650 F. Supp. 2d 326 (D.N.J. 2009) ..............................................................8

*Philbin v. Trans Union Corp.*,
101 F.3d 957 (3d Cir. 1997)........................................................................11

*Regan v. Law Offices of Edwin A. Abrahamsen & Assocs., P.C.*,
2009 U.S. Dist. LEXIS 112046 (E.D. Pa. Dec. 1, 2009)...........................7

# TABLE OF AUTHORITIES (cont'd)

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007).................................................................................12

*SimmsParris v. Countrywide Fin. Corp.*,
652 F.3d 355 (3d Cir. 2011)...................................................................10

*Sonichsen v. Fifth Third Bank*,
2017 U.S. Dist. LEXIS 150514 (N.D. Ill. Sept. 18, 2017) .....................11

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
533 F.3d 162 (3d Cir. 2008)...................................................................14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .............................................................................4

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)...................................................................................6

*Thomas v. NCO Fin. Sys.*,
2002 U.S. Dist. LEXIS 14157 (E.D. Pa. July 31, 2002).........................7

*TransUnion, LLC v. Ramirez*,
2021 U.S. LEXIS 3401 (June 25, 2021) ..................................................5

*Van Veen v. Equifax Info.*,
844 F. Supp. 2d 599 (E.D. Pa. 2012) .....................................................15

*Westra v. Credit Control of Pinellas*,
409 F.3d 825 (7th Cir. 2005)..................................................................14

## Statutes

15 U.S.C. § 1681n..................................................................................12

15 U.S.C. § 1681o............................................................................ 11, 12

15 U.S.C. § 1681s-2(b) ..............................................................11, 12, 13 14

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Rules**

Fed. R. Civ. Pro. 56(c) ............................................................................3

N.J. RPC 1.4(b) ....................................................................................13

Defendants, CACH, LLC ("CACH") and Resurgent Capital Services, LP ("RCS") (collectively the "Defendants"), by and through their undersigned counsel state as follows in support of their Motion for Summary Judgment:

## INTRODUCTION

Plaintiff Lara Sanders ("Plaintiff") alleges that Defendants violated § 1692e of the Fair Debt Collection Practices Act (FDCPA) when they reported a settlement balance as due and owing and violated § 1682s-2(b) of the Fair Credit Reporting Act (FCRA) by failing to properly investigate her dispute and correct the overstated balance. *Compare* Dkt. #21 (Am. Complaint) *with* Dkt. #28, 29 (Opinion & Order dismissing all other claims). The following facts were established during discovery:

Federated Law Group, PLLC ("FLG") filed a state court collection lawsuit on behalf of CACH to collect the subject debt. *See* SMF[1] ¶11. CACH has no employees and as such relies entirely on its master servicer, RCS, to manage and service its accounts. *Id.* at ¶¶2-3. On or about December 6, 2017, FLG settled the debt and state court action without informing RCS. *Id.* at ¶¶12-17. FLG's failure to timely inform RCS of the settlement was in violation of established policies and procedures FLG was required to follow, as set forth in RCS' Agency Operations Manual. *Id.* at ¶¶25-27, 30, 34-35. After the debt was settled, RCS, on behalf of

---

[1] "SMF" refers to Defendants' Statement of Material Facts filed concurrently herewith.

CACH, reported the subject debt as owed only <u>once</u>, which reporting took into account the $1,000 payment. *Id.* at ¶¶38-39. Thereafter, on January 13, 2018, RCS received an Automated Credit Dispute Verification ("ACDV") from TransUnion disputing the subject debt. *Id.* at ¶42. RCS processed the ACDV on January 29, 2018 by reviewing the dispute against RCS' internal records to confirm the reporting matched its records. *Id.* at ¶43. Unaware of any settlement, RCS responded to the ACDV by confirming to TransUnion the date of last payment and amount past due. *Id.* at ¶¶44-45.

On January 30, 2018, RCS learned of the December 6, 2017 settlement for the first time after reaching out to FLG for an update as to the status of the state-court lawsuit. *Id.* at ¶¶12-18. RCS sent a letter to Plaintiff that same day verifying that the account was settled in full. *Id.* at ¶21. RCS also updated its credit reporting the next day – January 31, 2018 – to reflect that the account was paid in full for less than the full balance. *Id.* at ¶41. There is no evidence in the record to support CACH's tradeline for the subject debt was ever disseminated to any third-party between December 6, 2017 and January 31, 2018 or that Plaintiff suffered any injury as a result of the short-term reporting of the debt as owed following settlement. *Id.* at ¶50. When applicable law is applied to the aforementioned facts, it becomes clear that Plaintiff lacks Article III standing and that Defendants cannot be found liable under either the FDCPA or FCRA.

2

## STANDARD

Summary judgment is appropriate when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). If the non-moving party asserts that there is a genuine dispute of fact, it "must support that assertion by 'citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials.'" *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* Moreover, "facts must be viewed in the light most

favorable to the nonmoving party *only if* there is a 'genuine' dispute as to those facts." *Morgan-Hicks v. N.J. Dep't of Corr.*, 2020 U.S. Dist. LEXIS 73460, *10 (D.N.J. Apr. 24, 2020) (emphasis added) (internal quotations omitted). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## ARGUMENT

### I.   PLAINTIFF LACKS STANDING.

The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The burden to establish each element is on the plaintiff. *Id.* To establish injury in fact, "a plaintiff must show that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

The record here is devoid of any evidence to support that Plaintiff suffered an injury as a result of the claimed violations. Specifically, there is no evidence to support that Plaintiff was ever denied credit or suffered any other detriment as a

4

result of the alleged inaccurate reporting. Moreover, as the Supreme Court recently made clear, "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *TransUnion, LLC v. Ramirez*, 2021 U.S. LEXIS 3401, *29-30 (June 25, 2021) (quoting *Owner-Operator Independent Drivers Assn., Inc. v. United States Dept. of Transp.*, 879 F.3d 339, 344-45 (D.C. Cir. 2018)). Thus, whereas here, there is no evidence to support the claimed inaccurate information was disseminated to third-parties, there is no close relationship to the reputational harm associated with the tort of defamation so as to satisfy the concrete-harm requirement.

Moreover, as explained in § III below, the only allegations of damages in this case consist of amounts purportedly incurred by Plaintiff in settling the debt and the costs incurred in filing and serving this federal lawsuit. Clearly, the amounts incurred in settling the debt *prior* to the complained-of conduct cannot be traced to Defendants' conduct and redressed by a favorable decision in this case because Plaintiff became indebted for those amounts long before and regardless of any subsequent conduct by Defendants.[2] Moreover, the prospect of an award of costs for filing and service does not itself create a justiciable controversy, whereas

---

[2] The absurdity of Plaintiff seeking such amounts is buttressed by the fact that if Plaintiff had not engaged attorneys to negotiate the settlement and paid the settlement, she could not allege that Defendants inaccurately reported her debt in violation of the FDCPA and FCRA.

here, nothing else is at stake in the litigation. Rather, costs of suit are only recoverable at the end of litigation by a prevailing party who has maintained Article III standing throughout the case. Accordingly, neither category of damage alleged by Plaintiff is recoverable as compensatory damages let alone gives rise to Article III standing. Rather, the allegations are the precise bootstrapping that the U.S. Supreme Court disallowed in *Steel*:

> Psychic satisfaction [from vindication of the rule of law] is not an acceptable Article III remedy because it does not redress a cognizable Article III injury. Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement. . . [A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are the byproduct of the litigation itself. An interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107-08 (1998) (rejecting concept that costs incurred prior to the litigation gave rise to Article III standing) (internal quotations and citations omitted).

## II.   BONA FIDE ERROR DEFENSE PREVENTS LIABILITY FOR THE CLAIMED VIOLATIONS OF § 1692e.

The Third Circuit has established a three-part test that a debt collector must satisfy in order to avail itself of the bona fide error defense: "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid

such errors." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006). "The bona fide error defense generally encompasses clerical mistakes or instances where, despite procedures employed to avoid a particular type of error, such an error is inadvertently made." *Thomas v. NCO Fin. Sys.*, 2002 U.S. Dist. LEXIS 14157, *16 (E.D. Pa. July 31, 2002); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010) (mere factual mistakes or clerical errors qualify as bona fide errors). "The intent required by the first prong is the debt collector's intent to violate the FDCPA," not the intent to engage in the underlying action itself. *Gebhardt v. LJ Ross Assocs.*, 2017 U.S. Dist. LEXIS 90252, *9 (D.N.J. June 12, 2017); *Regan v. Law Offices of Edwin A. Abrahamsen & Assocs., P.C.*, 2009 U.S. Dist. LEXIS 112046, *22-23 (E.D. Pa. Dec. 1, 2009) ("a debt collector need show only that 'the violation was unintentional" not that underlying action itself was unintentional because "'[t]o hold otherwise would effectively negate the bona fide error defense'") (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)); *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006) ("[T]he only workable interpretation of the intent prong of the FDCPA's bona fide error defense is that a debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional."); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (same). As to the second prong, "[a] bona fide error is one that is plausible and

7

reasonable." *Gebhardt*, 2017 U.S. Dist. LEXIS 90252, *10 (internal quotations omitted). Finally, with respect to the third prong, the FDCPA "does not require debt collectors to take every conceivable precaution to avoid errors; rather it only requires reasonable precaution.'" *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 343 (D.N.J. 2009) (quoting *Kort*, 394 F.3d at 539). To that end, "[t]he Supreme Court has explained that 'procedures reasonably adapted to avoid any such error' may be read to apply to 'processes that have mechanical or other 'regular orderly' steps to avoid mistakes – for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of the day.'" *Gebhardt*, 2017 U.S. Dist. LEXIS 90252, *10 (quoting *Jerman*, 559 U.S. at 587).

The reporting error at issue is a textbook example of the type of clerical error subject to the bona fide error defense. First, the reporting error was unintentional and bona fide as supported by the fact that RCS was not initially aware of the settlement and immediately and voluntarily corrected the error upon learning of the settlement. *See* SMF ¶¶20-21, 41. Similarly, that RCS was not aware of a single other instance in which FLG failed to timely and appropriately communicate the status of an account further supports that the error in this case was genuine, unintentional and reasonable. *See id.* at ¶36.

8

As for the procedures put in place to prevent the error, at all relevant times RCS maintained an Agency Operations Manual (the "Manual") required to be followed by third-party servicers, such as FLG, which Manual requires third-party servicers, such as FLG to: (a) provide regular updates to RCS regarding the status of accounts using the Standard Update File (SUF), including "immediately" communicating any settlements (but no later than the day after the settlement occurs), and (b) institute an internal audit procedure to review posted payments for settlement arrangements to guarantee all settlement statuses are sent to RCS in a timely manner. *See id.* at ¶¶25-27, 30-31. RCS also regularly monitors and audits its third-party servicers to ensure that they are properly updating the status of accounts and disciplines those servicers, by assessing fines and/or terminating the servicer, if they fail to status accounts appropriately. *See id.* at ¶¶28-29, 32-33. The aforementioned policies and procedures are objectively reasonable to prevent the error complained of here. Indeed, had FLG complied with its obligations under the Manual, RCS never would have credit reported the Account as owed on January 11, 2018 and/or confirmed the accuracy of the information reported in response to Plaintiff's dispute. *See id.* at ¶¶40, 45.

Having satisfied each of the elements of the bona fide error defense, Defendants cannot be found liable under the FDCPA.

### III.   NO EVIDENCE OF ACTUAL DAMAGES TO SUPPORT A NEGLIGENT VIOLATION OF § 1681s-2(b).

9

"Section 1681o authorizes consumers to bring suit for damages caused by a furnisher's negligent breach of its duties to consumers under 15 U.S.C. § 1681s-2(b)." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). Nothing in Plaintiff's pleadings, however, suggest that Plaintiff seeks to hold Defendants liable for a negligent violation pursuant to § 1681o. *See* Dkt. #21 (Am. Complaint). To the contrary, Plaintiff alleges that Defendants "knowing[ly]" furnished inaccurate information in violation of § 1681s-2(b) and that Defendants' inaccurate reporting "was made willfully and deliberately." *See id.* at ¶¶35, 82. "It is well-established, that adding claims to a pleading is properly done by amending the complaint; it is too late to introduce an additional claim at the summary judgment stage." *Canadian Nat'l Ry. V. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1036 (D.N.J. 2011) (internal quotations omitted); *see also Carr v. Gillis Associated Industries, Inc.*, 227 Fed. App. 172, 176 (3d Cir. 2007) ("District Courts have broad discretion to disallow the addition of new theories of liability at the eleventh hour."). Because Plaintiff is limited at this stage of the proceedings to the claims made in her Complaint, which claims on their face pertain only to a willful violation of the FCRA, this Court need not consider whether Defendants negligently violated the FCRA.

Regardless, the record does not support liability in this case under § 1681o. Where there are no actual damages sustained as a result of the claimed violation,

no recovery is permitted under § 1681o. *See* 15 U.S.C. § 1681o (civil liability is limited to actual damages for negligent noncompliance); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1997) (identifying injury caused by the violation as an essential element to a negligent FCRA noncompliance claim); *Hassell v. Centric Bank*, 2020 U.S. Dist. LEXIS 120586, *7-8 (M.D. Pa. July 6, 2020) (discussing actual damages as a necessary component to negligent non-compliance with § 1681s-2(b)); *Sonichsen v. Fifth Third Bank*, 2017 U.S. Dist. LEXIS 150514, *10 (N.D. Ill. Sept. 18, 2017) ("claims for negligent noncompliance [with the FCRA] require a showing of actual damages"); *Kleyweg v. Bank of Am., N.A.*, 2017 U.S. Dist. LEXIS 19046, *13 (N.D. Ind. Feb. 10, 2017) (granting summary judgment to defendant on alleged negligent violation of § 1681s-2(b) claim where plaintiff failed to establish actual damages because § 1681o "requires actual damages"). Moreover, to be recoverable, actual damages must be sustained "as a result of the failure" to comply with the FCRA section sued under. *See* 15 U.S.C. § 1681o. Here, Plaintiff contends to have suffered actual damages in the form of the $1,000 settlement payment, $2,500 in attorneys' fees incurred to settle the state court action,[3] $400 in filing fees in this federal lawsuit, and $500.20 in service of

---

[3] There is also no evidence in the record, such as copies of payments, invoices, or an engagement agreement, to support that Plaintiff in fact incurred $2,500 in attorneys' fees in the state court case. *See* SMF at ¶49.

process fees[4] in this federal lawsuit. *See* SMF at ¶48; SMF Exhibit D at p. 5. None of the aforementioned damages, however, are fairly traceable to the conduct at issue – i.e. an alleged failure to comply with § 1681s-2(b). Certainly, the settlement payment and any attorneys' fees incurred in settling the debt predate the dispute giving rise to the duty to investigate and cannot therefore be deemed a result of any failure to comply with § 1681s-2(b). Plaintiff's costs in this action similarly do not constitute actual damages stemming from the alleged violation, but rather are an allowable recovery only if Plaintiff successfully enforces liability for actual damages. *See* 15 U.S.C. § 1681o. Plaintiff's failure to establish actual damages is fatal to a claim for recovery under § 1681o, and as such, even if Plaintiff could be said to have pled a negligence claim, same could not survive summary judgment.

## IV.   NO EVIDENCE OF WILLFUL OR RECKLESS BEHAVIOR IN VIOLATION OF THE FCRA.

Section 1681n authorizes consumers to bring suit for actual damages and statutory damages caused by a furnisher's willful breach of its duties to consumers under 15 U.S.C. § 1681s-2(b). *See* 15 U.S.C. § 1681n. "[W]illful violations of the FCRA are assessed for 'reckless disregard.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 60 (2007)). "[A] company subject to the FCRA does not act in reckless disregard of it

---

[4] Similarly, there is no evidence in the record, such as copies of payment or invoices, to support that Plaintiff incurred $500.20 in service of process fees in this case. *See* SMF at ¶49.

unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins.*, 551 U.S. at 69. There is no evidence in the record, however, to support that Defendants were noncompliant with § 1681s-2(b), let alone willfully noncompliant.[5] To the contrary, the record reflects that Defendants, at all relevant times, had policies in place to ensure that when attorneys such as FLG settle a case they timely update RCS, so that RCS can accurately report the account as settled. Indeed, upon finally learning that the account was settled, RCS immediately corrected its reporting to reflect that the account was settled. Reliance on RCS' attorneys to timely update cannot be deemed reckless particularly when considering that lawyers are ethically obligated under the Rules of Professional Conduct to "keep a client reasonably informed about the status of a matter." N.J. RPC 1.4(b).

## V.    RECORD IS DEVOID OF EVIDENCE TO SUPPORT A VIOLATION OF § 1682s-2(b).

Consumers cannot privately enforce the duty of a furnisher to report accurate information. *See Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir.

---

[5] Even if this Court could reasonably conclude that a material dispute exists as to whether Defendants willfully violated the FCRA, the Court should enter judgment in favor of Defendants on Plaintiff's request for actual damages for the reasons explained in Section III *supra*.

2011) ("[Plaintiff] cannot base his claim on 15 U.S.C. § 1681s-2(a)(1)(A) because no private right of action exists under that provision."). The FCRA does, however, allow a private right of action when furnishers, after receiving notice from a consumer reporting agency that they might have provided inaccurate information, fail to conduct a reasonable investigation and correct any misinformation revealed therein. *See* 15 U.S.C. § 1681s-2(b); *Farren v. RJM Acquisition Funding, LLC*, 2005 U.S. Dist. LEXIS 15230, *13 (E.D. Pa. July 25, 2005) ("provision has been construed to require a 'reasonable' investigation"). Accordingly, the standard placed on data furnishers pursuant to § 1682s-2(b) "is only to: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency;[6] and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information." *Farren*, 2005 U.S. Dist. LEXIS 15230 at *19-20 (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

---

[6] There is no dispute that Defendants responded to the ACDV as Plaintiff specifically alleges that Defendants "confirm[ed] their report as accurate after Plaintiff disputed the debt with the Credit Reporting Agency." Doc. #21 (Am. Complaint) at ¶82; *see also Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) ("the allegation in the amended complaint is a binding judicial admission").

For obvious reasons, the reasonableness of a furnisher's investigation is dependent on what it learned about the dispute from the consumer reporting agency. *See Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 605 (E.D. Pa. 2012). Accordingly, the Court cannot "judge Defendant[s'] actions abstractly, but in light of Trans Union's notice of dispute." *Id.* at 608. Here, however, the record is devoid of any evidence to support RCS was notified that the basis for Plaintiff's dispute was that the account was settled. Plaintiff also failed to conduct any discovery into the procedures employed by RCS in responding to the dispute. Under these circumstances, nothing more can be said to have been required of RCS when it matched the information in its records and confirmed the accuracy of the information to Trans Union. *See Mercedes v. Wells Fargo Home Mortg. Inc.*, 2015 U.S. Dist. LEXIS 12215, *10-11 (D.N.J. Feb. 3, 2015) (granting summary judgment to furnisher where dispute was generic because the furnisher need only have verified the reported information was consistent with its records, which appears to be what it did); *Grossman v. Barclays Bank Del.*, 2014 U.S. Dist. LEXIS 20149, *32 (D.N.J. Feb. 14, 2014) ("In the absence of allegations of fraud, identify theft, or other issues not identifiable from the face of [furnisher's] records, the furnisher need not do more than verify that the reporting information is consistent with the information in its records.") (internal quotations omitted); *Farren*, 2005 U.S. Dist. LEXIS 15230 at *20-21 ("The statute does not require

[defendant] or any data furnisher to take extraordinary means to investigate and *discover* disputed information but rather calls for a more passive investigation where the data furnisher is determining on that the information provided to it matches the information in its records.") (emphasis in original).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter judgment in their favor and for such other and further relief as this Court deems just.

Respectfully submitted,

KAUFMAN DOLOWICH & VOLUCK, LLP

BY:   /s/ Monica M. Littman
RICHARD J. PERR, ESQUIRE
MONICA M. LITTMAN, ESQUIRE
GRAEME E. HOGAN, ESQUIRE
Four Penn Center
1600 John F. Kennedy Blvd., Suite 1030
Philadelphia, PA 19103
(215) 501-7024 (phone)
(215) 405-2973 (fax)
rperr@kdvlaw.com; mlittman@kdvlaw.com;
ghogan@kdvlaw.com

MESSER STRICKLER, LTD.

By:   /s/ Katherine M. Saldanha Olson (Pro Hac Vice)
KATHERINE M. SALDANAH OLSON, ESQ.
225 W. Washington St., Ste. 575
Chicago, IL 60606
(v) 312-334-3444; (f) 312-334-3444
kolson@messerstrickler.com

16

Dated: November 12, 2021     *Attorneys for Defendants CACH, LLC and*
                                     *Resurgent Capital Services, L.P.*

## CERTIFICATE OF SERVICE

I, MONICA M. LITTMAN, ESQUIRE, hereby certify that on or about this date, I served a true and correct copy of the foregoing electronically via the Court's CM/ECF system on the following:

Lawrence Katz
Law Offices of Lawrence Katz
445 Central Avenue, Ste. 201
Cedarhurst, NY 11516
lawrencekatzone@gmail.com
*Attorney for Plaintiff*


/s/ Monica M. Littman
MONICA M. LITTMAN, ESQUIRE

Dated: November 12, 2021


4884-6617-3699, v. 1

18