**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**KAUFMAN DOLOWICH & VOLUCK, LLP**
BY    RICHARD J. PERR, ESQUIRE
        MONICA M. LITTMAN, ESQUIRE
        GRAEME E. HOGAN, ESQUIRE
Four Penn Center
1600 John F. Kennedy Blvd., Suite 1030
Philadelphia, PA 19103
Telephone: (215) 501-7002
Facsimile: (215) 405-2973
rperr@kdvlaw.com; mlittman@kdvlaw.com; ghogan@kdvlaw.com
**Attorneys for Defendants CACH, LLC and Resurgent Capital Services, L.P.**

| | |
|---|---|
| LARA M. SANDERS, on behalf of herself and all other similarly situated consumers, : : Plaintiff, : v. : CACH, LLC, and RESURGENT : CAPITAL SERVICES, L.P., : Defendants. : | CIVIL ACTION NO. 2:19-cv-00996-JXN-JSA |

**DEFENDANTS' LOCAL CIVIL RULE 56.1 STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE**

Defendants CACH, LLC ("CACH") and Resurgent Capital Services, L.P. ("RCS") (collectively "Defendants"), by and through their undersigned attorneys and pursuant to Local Civil Rule 56.1, hereby submit the following statement of material facts as to which Defendants contend there is no dispute and upon which Defendants are entitled to summary judgment on all claims brought against them by Plaintiff, Lara M. Sanders ("Plaintiff"):

1

## RELATIONSHIP BETWEEN CACH & RCS

1. CACH's principal business consists of purchasing portfolios of charged-off debt. *See* Declaration of Kimberly Hannigan at ¶4, attached hereto as **Exhibit A**.

2. CACH has no employees and as such relies on its master servicer, RCS, to service purchased accounts. *See* **Exhibit A** at ¶4.

3. RCS became the master servicer of CACH-owned accounts in June of 2017. *See* **Exhibit A** at ¶5

4. RCS does not typically take any collection action itself, but rather engages various third-party independent service providers, including attorneys, to collect the accounts managed by it. *See* **Exhibit A** at ¶6.

5. RCS maintains all books and records pertaining to the accounts owned by CACH and acts as CACH's attorney in fact with respect to the accounts owned by CACH pursuant to a Limited Power of Attorney filed with Greenville County, South Carolina. *See* **Exhibit A** at ¶7, Exhibit 1.

6. RCS' principal business purpose is asset management. *See* **Exhibit A** at ¶6.

## PLAINTIFF'S ACCOUNT

7. Plaintiff opened a credit card account with Citibank, N.A. on December 1, 1998 with an account number ending in 2349 (the "Account"). *See* **Exhibit A** at

¶¶8, 12, Exhibit 2.

8. The Account was charged off on June 27, 2012 with a balance of $15,372.51. *See* **Exhibit A** at ¶12, Exhibit 2.

9. On June 27, 2014, CACH succeeded to all rights, title, and interest in the Account via assignment. *See* **Exhibit A** at ¶9, Exhibit 2.

10. On or about April 5, 2017, CACH placed the Account for collection with Federated Law Group, PLLC ("FLG"), an independent third-party collection law firm. *See* **Exhibit A** at ¶13.

11. On or about July 10, 2017, FLG filed a lawsuit on behalf of CACH to collect the $15,372.51 balance owed on the Account, styled *CACH, LLC v. Lara M. Sanders* in the Superior Court of New Jersey, Essex County with Docket No. ESX L 4958-17 (the "State Court Litigation"). *See* **Exhibit A** at ¶14; Dkt. #21 (Amended Complaint) at ¶25; Dkt. #21-3.

12. On or about November 29, 2017, FLG negotiated a $1,000.00 settlement of the State Court Litigation with Plaintiff's attorney Levi Huebner. *See* Plaintiff's Document Production at Bates Number P51 to P53, attached hereto as **Exhibit B**.

13. On or about December 4, 2017, Mr. Huebner issued a settlement check in the amount of $1,000.00 and arranged for Fed-Ex delivery of the check to FLG. *See* **Exhibit B** at P51; *see also* Dkt. #21 (Amended Complaint) at ¶27.

3

14. In December 2017, FLG, like all RCS service providers, had a trust account specifically dedicated to RCS collections. *See* **Exhibit A** at ¶15. Payments received by FLG for RCS-serviced accounts, such as the Account, were to be deposited by FLG into the trust account and later remitted to RCS. *See id.*

15. On or about December 6, 2017, FLG received and deposited the $1,000.00 payment on the Account. *See* **Exhibit A** at ¶16; *see also* Dkt. #21 (Amended Complaint) at ¶29 ("[o]n December 6, 2017, the Settlement check was accepted and negotiated"); **Exhibit B** at P51 (settlement check "was put in the FedEx Box and should be going out tomorrow" i.e. 12/5/2017).

16. The proceeds from the December 6, 2017 payment were subsequently remitted to RCS. *See* **Exhibit A** at ¶16.

17. FLG did not communicate to RCS at the time of remittance, or at any time prior to January 30, 2018, that the $1,000.00 payment was negotiated and received in settlement of the Account. *See* **Exhibit A** at ¶16.

18. On January 30, 2018, RCS sent a secure message to FLG requesting an update as to the status of the State Court Litigation. *See* **Exhibit A** at ¶17, Exhibit 3.

19. RCS received a response from FLG to its secure message on January 30, 2018 notifying RCS that the December 6, 2017 payment of $1,000.00 was tendered in full settlement of the Account. *See* **Exhibit A** at ¶17, Exhibit 3.

20. Prior to January 30, 2018, neither RCS nor CACH was aware that the Account had been settled in exchange for the $1,000.00 payment. *See* **Exhibit A** at ¶17.

21. Upon learning of the settlement, RCS immediately mailed Lara M. Sanders a letter verifying that the Account had been settled in full on December 6, 2017. *See* **Exhibit A** at ¶18, Exhibit 4; *see also* Dkt. #21 (Amended Complaint) at ¶33; Dkt. #21-6.

### RCS' POLICIES & PROCEDURES

22. At all relevant times, when a collection account is known to RCS to have been settled for less than the full balance and the account is being credit reported, it has been RCS' policy to accurately report the status of the account as paid in full for less than the full balance. *See* **Exhibit A** at ¶19, Exhibit 5.

23. RCS employees are expected to be familiar with and follow all RCS policies, including the policy referenced in Paragraph 22 above. *See* **Exhibit A** at ¶20.

24. RCS employees receive regular seminar training on RCS' policies as well as federal and state credit reporting statutes, such as the Fair Credit Reporting Act. *See* **Exhibit A** at ¶20.

25. RCS expects and requires all third-party service providers collecting upon RCS-managed accounts, including collection law firms, to comply with RCS'

5

Agency Operations Manual. *See* **Exhibit A** at ¶21, Exhibit 6.

26. Copies of the Agency Operations Manual are supplied to each third-party service provider as part of RCS' onboarding process. *See* **Exhibit A** at ¶22. RCS is available to answer questions the third-party service provider may have regarding the policies and procedures contained therein. *See id.*

27. FLG was tendered a copy of the Agency Operations Manual consistent with Paragraph 26 above in or around June 2017. *See* **Exhibit A** at ¶23.

28. RCS regularly monitors its third-party service providers to confirm adherence to the Agency Operations Manual. *See* **Exhibit A** at ¶24.

29. RCS service providers that fail to adhere to the Agency Operations Manual are subject to discipline and termination. *See* **Exhibit A** at ¶24.

30. Per the policies set forth in the Agency Operations Manual, third-party service providers, such as FLG, are required to provide regular updates to RCS regarding the status of accounts using the Standard Update File (SUF), including "immediately" communicating any settlements, but certainly no later than the day after the settlement payment posts. *See* **Exhibit A** at ¶25, Exhibit 6.

31. Per the policies set forth in the Agency Operations Manual, third-party service providers, such as FLG, are also required to institute an internal audit procedure to review posted payments for settlement arrangements to guarantee all

settlement statuses are sent to RCS in a timely manner. *See* **Exhibit A** at ¶25, Exhibit 6.

32. RCS regularly audits its third-party service providers, including collection law firms, to ensure that they are properly updating the status of accounts. *See* **Exhibit A** at ¶26, Exhibit 6.

33. RCS also assesses fines on accounts which are not statused appropriately by third-party service providers. *See* **Exhibit A** at ¶27, Exhibit 6.

34. Consistent with the policies and procedures required to be followed by FLG, as set forth in the Agency Operations Manual, FLG should have communicated to RCS no later than December 7, 2018 that the $1,000.00 payment was in full settlement of the Account. *See* **Exhibit A** at ¶28, Exhibit 6.

35. FLG's failure to do so was in direct violation of the Agency Operations Manual and subjected FLG to discipline, including the assessment of a fine. *See* **Exhibit A** at ¶28.

36. Apart from this lawsuit, RCS is not aware of a single other instance in which FLG failed to timely and appropriately communicate to RCS the status of an account as required by the Agency Operations Manual. *See* **Exhibit A** at ¶29.

## CREDIT REPORTING OF THE ACCOUNT

37. In July 2017, RCS began credit reporting the Account on behalf of CACH to the three (3) major reporting agencies. *See* **Exhibit A** at ¶30, Exhibit 7.

38. RCS only credit reported the Account as owed <u>once</u> after the $1,000.00 in settlement proceeds was remitted to RCS. *See* **Exhibit A** at ¶34, Exhibit 7. Specifically, RCS reported on January 11, 2018, that the Account was owed. *See id.*

39. The balance reported on January 11, 2018 took into account the $1,000.00 payment. *See* Dkt. #21 (Amended Complaint) at ¶30 ("On or about January 10, 2018, Defendants reported the debt on Plaintiff's account as owed in full, *less the amount received for the settlement . . . .*") (emphasis added).

40. Had FLG timely communicated the settled status of the Account to RCS, as it was required to do, RCS would never have credit reported the Account as owed on January 11, 2018. *See* **Exhibit A** at ¶35.

41. On January 31, 2018, i.e. the day after RCS learned from FLG that the Account had been settled, RCS updated its reporting, in accordance with RCS' credit reporting policies, to reflect that the Account had been "Paid in Full for Less than the Full Balance." *See* **Exhibit A** at ¶¶36-37, Exhibit 7.

PLAINTIFF'S DISPUTE

42. On or about January 13, 2018, RCS received an Automated Credit Dispute Verification ("ACDV") from TransUnion notifying RCS that Plaintiff disputed the Account. *See* **Exhibit A** at ¶38.

43. On January 29, 2018, RCS processed the ACDV request by reviewing the dispute against RCS' internal records for the Account to confirm the information

it was reporting matched its records. *See* **Exhibit A** at ¶39.

44. RCS also reported the results of its investigation to TransUnion by updating the date of last payment and balance on the Account to December 6, 2017 and $14,372.51, respectively -- which data matched RCS' records at the time. *See* **Exhibit A** at ¶39.

45. Had RCS known on January 29, 2018 that the Account was settled, RCS would have, in responding to the ACDV request, updated the Account to reflect the Account was paid in full rather than reported a balance owed of $14,372.51. *See* **Exhibit A** at ¶40.

46. After learning on January 30, 2018 that its ACDV response was inaccurate, as explained in Paragraph 41 above, RCS updated its credit reporting to reflect the Account was paid in full for less than the full balance. *See* **Exhibit A** at ¶41, Exhibit 7.

PLAINTIFF'S CLAIMED DAMAGES

47. Plaintiff is not seeking any emotional distress damages in this action, either in the form of medical damages or garden variety emotional distress. *See* Aug. 6, 2020 Transcripts at 9:15-25, 15:13-16:16, attached hereto as **Exhibit C**; *see also* Plaintiff's Verified Supplemental Response to Interrogatory No. 7 at p. 5, attached hereto as **Exhibit D**; Plaintiff's Supplemental Response to Document Request No.

9

21 at p. 5 ("Plaintiff did not suffer any mental of [sic] physical injury"), attached hereto as **Exhibit E**.[1]

48. The only actual damages Plaintiff <u>contends</u> to have suffered as a result of her claims pled in this lawsuit are: (1) the $1,000 paid in settlement of the Account; (2) $2,500 in attorney's fees incurred in connection with settling the Account; (3) the $400 filing fee for this lawsuit; and (4) $500.20 in fees for service of process in this lawsuit. *See* **Exhibit D** at p. 5.

49. No records substantiating the fees paid to Plaintiff's attorney in the State Court Litigation or the $500.20 in fees for service of process were ever produced in this case, despite Defendants requesting in discovery "all documents which evidence any actual or other damages suffered by [Plaintiff] as a result of the conduct complained of in [Plaintiff's] Amended Complaint." *See* **Exhibit F** at p. 8, Document Request No. 19.

50. There is similarly no evidence in the record to support that the CACH reported tradeline was disseminated to or reviewed by any third party between the time the Account was settled and the reporting was updated on January 31, 2018.

---

[1] Plaintiff did not identify the substance of each document or interrogatory request in her response. For reference, *see* Defendants' Requests for Production and Interrogatories attached hereto as **Exhibit F**.

        Respectfully submitted,

        KAUFMAN DOLOWICH & VOLUCK, LLP

BY:  /s/ Monica M. Littman
       RICHARD J. PERR, ESQUIRE
       MONICA M. LITTMAN, ESQUIRE
       GRAEME E. HOGAN, ESQUIRE
       Four Penn Center
       1600 John F. Kennedy Blvd., Suite 1030
       Philadelphia, PA 19103
       (215) 501-7024 (phone)
       (215) 405-2973 (fax)
       rperr@kdvlaw.com; mlittman@kdvlaw.com;
       ghogan@kdvlaw.com

        MESSER STRICKLER, LTD.

By:  /s/ Katherine M. Saldanha Olson (Pro Hac Vice)
       KATHERINE M. SALDANAH OLSON, ESQ.
       225 W. Washington St., Ste. 575
       Chicago, IL 60606
       (v) 312-334-3444; (f) 312-334-3444
       kolson@messerstrickler.com

Dated: November 12, 2021    *Attorneys for Defendants CACH, LLC and Resurgent Capital Services, L.P.*

## CERTIFICATE OF SERVICE

I, MONICA M. LITTMAN, ESQUIRE, hereby certify that on or about this date, I served a true and correct copy of the foregoing electronically via the Court's CM/ECF system on the following:

Lawrence Katz
Law Offices of Lawrence Katz
445 Central Avenue, Ste. 201
Cedarhurst, NY 11516
lawrencekatzone@gmail.com
*Attorney for Plaintiff*

/s/ Monica M. Littman
MONICA M. LITTMAN, ESQUIRE

Dated: November 12, 2021