# EXHIBIT

# C

```
1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
2
   _____
3  LARA M. SANDERS, on behalf   : Case No. 2:19-cv-00996-SDW-JSA
   of herself and all other     :
4  similarly situated consumers,:
                                 :
5            Plaintiff,          :
                                 :
6        vs.                     :
                                 : Newark, New Jersey
7  CACH, LLC, RESURGENT          : Thursday, August 6, 2020
   HOLDINGS, LLC, and RESURGENT  :
8  CAPITAL SERVICES L.P.,        :
                                 :
9            Defendants.         :
   _____

10             TRANSCRIPT OF ZOOM STATUS CONFERENCE
              BEFORE THE HONORABLE JOSEPH A. DICKSON
11                UNITED STATES MAGISTRATE JUDGE

12 APPEARANCES:

13 For the Plaintiff:          Law Offices of Lawrence Katz
                               By:  LAWRENCE KATZ, ESQUIRE
14                             445 Central Avenue, Suite 201
                               Cedarhurst, NY 11516
15
                               Levi Huebner & Associates, P.C.
16                             By:  LEVI HUEBNER, ESQUIRE
                               488 Empire Boulevard, Suite 100
17                             Brooklyn, NY 11225

18 For the Defendants:         Kaufman, Dolowich & Voluck, LLP
                               By:  MONICA M. LITTMAN, ESQUIRE
19                             Four Penn Center
                               1600 JFK Boulevard, Suite 1030
20                             Philadelphia, PA 19103

21 Transcription Company:      KLJ Transcription Service, LLC
                               P.O. Box 8627
22                             Saddle Brook, NJ 07663
                               (201)703-1670 - Fax (201)703-5623
23                             www.kljtranscription.com
                               info@kljtranscription.com
24
   Proceedings recorded by electronic sound recording, transcript
25 produced by transcription service.
```

1                              I N D E X

2

3  COLLOQUY ON OUTSTANDING DISCOVERY ISSUES:              PAGE

4  Re:  Defendants' Discovery Requests.. . . . . . . . . . . 4

5  Re:  Plaintiff's Discovery Requests.. . . . . . . . . .  18

6  Re:  Redaction of Manual. . . . . . . . . . . . . . .  44

7  Re:  Deadline to Add/Amend Parties & DED. . . . . . . .  52

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Conference recording commenced.)

2            THE COURT:  This is the matter of Sanders v. CACH,

3    LLC, Case Number 19-996.  May I have appearances of counsel,

4    please?

5            MR. KATZ:  Lawrence Katz appearing for the

6    plaintiffs.

7            MR. HUEBNER:  Levi Huebner with Mr. Katz.

8            THE COURT:  Okay.

9            MS. LITTMAN:  Good afternoon, Your Honor.  My name

10   is Monica Littman.  I represent the defendants CACH, LLC and

11   Resurgent Capital Services, L.P.

12           THE COURT:  Okay.  Great.

13           Now, we are meeting via Zoom today to discuss

14   discovery issues disputes that we've had, that have been going

15   on for a few months now.  And I've been through all of the

16   letters, going all the way back, and our most recent letters I

17   have -- I have letters from the defendant, but what I've done

18   is put in front of me Mr. Katz's letters of July 22nd and July

19   20th, which I think crystallizes what's actually outstanding.

20           I know that Ms. Littman's letters did that too, and

21   I do have them here.  Give me one second, please.

22                       (Extended pause)

23           THE COURT: Here we go.  July 24th; right?  Yeah.

24           Okay.  So, let's -- for no -- in no particular

25   reason of order, let's discuss what Ms. Littman is looking for

1   and has not received yet.  And, Ms. Littman, let's -- take me

2   through what it is that you're still looking for.

3           MS. LITTMAN:  Yes, Your Honor.  And that's in my --

4   I'll refer to my July 24th letter, which is docket number --

5   docketed number 62.  I think that the letter is -- I'll just

6   go through it quickly.

7           Interrogatory -- for plaintiff's interrog --

8   responses to defendants' interrogatories number 2 and 3, we

9   are just looking for plaintiff to send a supplemental written

10  response stating that plaintiff is not in possession of

11  information that's responsive.

12          For interrogatory numbers 7 --

13          THE COURT:  Wait.  Let's do them one at a time.

14  Let's do them one --

15          MS. LITTMAN:  Of course.

16          THE COURT:  -- at a time.

17          MS. LITTMAN:  Of course.

18          THE COURT:  Now, Mr. Katz wrote a letter actually

19  two days before your letter.  His is docket number -- document

20  number 58, where he says on interrogatories number 2 and 3:

21          "At this juncture, plaintiff is not in possession of

22      particulars of the alleged 'debt' which relates to

23      consumer purchases dating back ten years ago."

24          So, what -- so, you have that response at least from

25  Mr. Katz.  You're looking for a sworn statement from the

Colloquy                                                    5

1   plaintiff.

2           MS. LITTMAN:  Yes.  Just -- just simply put into a

3   supplemental response.

4           THE COURT:  Okay.  All right.  You got that Mr.

5   Katz?  Is there any reason why you can't do that?

6           MR. KATZ:  I --

7           MR. HUEBNER:  Prob --

8           MR. KATZ:  That -- that would be fine, Judge.

9           THE COURT:  Okay.  All right.  So, let's go the next

10  one.

11          MS. LITTMAN:  The next one is plain -- defendants'

12  interrogatory number 7.  Plaintiff states in the July 20th

13  letter that plaintiff will furnish an itemization of actual

14  costs per -- which occurred as a result of defendants'

15  actions.

16          THE COURT:  Right.  I don't --

17          MS. LITTMAN:  We have not received that yet.

18          THE COURT:  Sorry.  I know we are on the record and

19  I know I told you to talk and then I'm cutting you off, but

20  I'm looking at his -- his answers -- this is why, hopefully,

21  some of this we can burn through very quickly.  Plain -- he

22  says plaintiff will furnish that.  You still haven't received

23  it.

24          Mr. Katz, when can you get that -- the answer to

25  number 7 over to Ms. Littman?

Colloquy                                6

1          MR. KATZ:  All right.  I would think that certainly

2   no more than two weeks.

3          THE COURT:  And then interrogatory number 9 is next,

4   Ms. Littman?

5          MS. LITTMAN:  In interrogatory number 9 -- let me

6   just click onto it.

7                        (Extended pause)

8          MS. LITTMAN:  I just want to make sure I have the

9   question correct.  Hold on one -- one second.

10          THE COURT:  Yeah.  He says that you're improperly

11   conflating document demands and interrogatories.

12          MS. LITTMAN:  Well, I think that in response, as we

13   said, if there are documents that are responsive pursuant to

14   Federal Rule of Civil Procedure 33(d), plaintiff can

15   identify --

16          THE COURT:  Right.

17          MS. LITTMAN:  -- those documents.

18          THE COURT:  Right.  And at one point, I know that

19   his answer was all of his responses are applicable to all of

20   your demands.

21          MS. LITTMAN:  Right, and that's --

22          THE COURT:  Which is not -- but without cutting off

23   Ms. Littman one more time, but before you -- she doesn't have

24   to say anything, because she's right on this.  That's not an

25   appropriate response.  The document demands -- each document

1  demand should be responded to and the documents produced by

2  the responding party should identify what he's answering --

3  what he or she is answering.

4         Now, I don't know how many documents are involved

5  here.  I don't know if it's a thousand pages or twenty pages.

6         MS. LITTMAN:  Your Honor, I would just like to

7  clarify.  So, the interrogatory number 9 was looking for

8  specification of the terms of the alleged settlement agreement

9  that was referenced in paragraph 28 of plaintiff's amended

10 complaint.  So, --

11        THE COURT:  Right.  I remember that.

12        MS. LITTMAN:  Okay.  So, if plaintiff can identify

13 the terms or refer to the documents under the rules, that

14 would be fine.

15        THE COURT:  And --

16        MR. HUEBNER:  Your Honor, if I may?  So, the

17 stipulation of settlement and the -- is -- the stipulation of

18 settlement is attached in the discovery demand.  The document

19 speaks for itself.  I mean, defendants' -- I mean, plaintiff's

20 responses to defendants' demands, we're -- we're talking about

21 something like -- it's not an abundant amount of pages.  We're

22 talking about 50 -- 50 -- 50-something pages.

23        I apologize, Your Honor.  I was looking for the

24 Bates stamp number.  I'm sorry, but I had two eye surgeries in

25 the last few weeks, Your Honor, so I'm having a little rough

1   day today.  I had retina surgery.

2            THE COURT:  All right.

3            MR. HUEBNER:  I've got them here.  60 -- 62 pages,

4   Your Honor.  And one of the first things is -- a stipulation

5   of discontinuance is -- is document 1, and that -- that

6   document sort of speaks for itself.  It was prior counsel and

7   counsel for CACH that were in -- were -- who executed that --

8   that stipulation.

9            THE COURT:  Well, look.  The -- well, here's what

10  the -- sitting from where I sit, I think what normally these

11  types of disputes are all about is that you need to clarify or

12  make certain or confirm for the requesting party, in this case

13  the defendant, that what you have given is all you have and

14  there are no other terms and conditions or anything else that

15  later on you or client are going to try to add into the record

16  or argue about this.

17           I don't think it's that hard.  I did read your

18  answer.  I think that's what your answer is, what you gave her

19  on those one or two documents was everything.  Just confirm

20  that by -- have your client confirm that by way of a sworn an

21  -- interrogatory answer.  If there's anything else, of course

22  you have to give it.  And I know you know that, so I --

23           MR. HUEBNER:  That's --

24           THE COURT:  I think sometimes we fight about things

25  that we don't need to fight about, we just need to go ahead

1   and confirm this is it and (indiscernible) --

2            MR. HUEBNER:  (Indiscernible) we're talking about

3   number 9, Your Honor?  If I -- I apologize.  Am I correct, Ms.

4   Littman, we're talking about 9?

5            MS. LITTMAN:  Yes, interrogatory number 9.

6            THE COURT:  Okay.

7            (Extended pause or connection/audio issues.)

8            MR. HUEBNER:  -- the responsive documents, so I'll --

9   we'll work on that, Your Honor.

10           THE COURT:  Okay.

11           MR. HUEBNER:  Appreciate that.

12           THE COURT:  It's not hard.  Interrogatory --

13           MR. HUEBNER:  I got it, Your Honor.  Well, the two

14  weeks, it sounds reasonable, Your Honor.

15           THE COURT:  Interrogatory number 10.  That has to do

16  with whether or not she is seeking -- she sought medical

17  treatment.  You answered she doesn't.  I assume that that

18  means that you'll also put that in her -- whatever response

19  you're giving to Ms. Littman, you'll have her verify under

20  oath that she hasn't sought medical treatment -- and there are

21  no medical damages in this case; correct?

22                     (Extended pause)

23           MR. HUEBNER:  Correct, Your Honor.

24           MR. KATZ:  That -- that's correct, Judge.

25           MR. HUEBNER:  Correct.

Colloquy                                                    10

1          THE COURT:  Okay.  Number 11, defendants withdraw.

2          Number 20.  I think the plaintiffs' response here is

3  actually adequate.  Ms. Littman, do you have a problem with

4  their response regarding the retainer agreement?  Right now

5  we're talking about a single-plaintiff case.  If it goes to

6  class action, they say they'll produce it.

7          MS. LITTMAN:  (Indiscernible)

8          THE COURT:  That's number 20.

9          MS. LITTMAN:  I mean, the issue is just timing, in

10  terms of how late that that may come.  I don't -- we don't

11  know if plaintiff is going to pursue -- continue to pursue

12  class certification.

13          THE COURT:  Well, no, we don't.  But I am not

14  worried about the timing.  If that happens, this issue has

15  been raised.  It's been preserved.  I am not going to cut your

16  right off to get any more discovery if we have to take merit

17  discovery or any type of discovery.  If a class is sought, if

18  it -- if the class is approved by the Court, I'll deal with

19  it.  It's an open issue.

20          MS. LITTMAN:  Thank you, Your Honor.  Thank you,

21  Your Honor.

22          THE COURT:  It's an open issue.  I'm not going to

23  let them get away with not turning it over because we finished

24  discovery.

25          MS. LITTMAN:  Thank you, Your Honor.

Colloquy                                          11

1        THE COURT:  Unless, of course, we're talking about

2    just after we do finish discovery.

3        All right.  Now we're into the document requests.

4    This is -- I think I jumped the gun.  And I was talking about

5    this before.  And that's where Mr. Katz says:

6            "Regardless, all documents are responsive to each

7        question and document request."

8        I need to know whether this is a real issue.

9    Sometimes that's clearly obvious.  Mr. Huebner just told me

10   there are only 59 or -- documents or 62 documents that have

11   been turned over.

12       MR. HUEBNER:  Sixty pages, but there are actually --

13       THE COURT:  Sixty pages.

14       MR. HUEBNER:  -- even less documents, Your Honor.

15       THE COURT:  Right.  So, Ms. Littman, if you were

16   confused about what's answering what question -- and I don't

17   mean that in a derogatory term.  You don't have to do their

18   work for them.  But if you need this answered, then I will

19   agree that they need to answer the question correctly.

20       MS. LITTMAN:  Particularly for document request

21   number 5.  And that during a meet and confer call, I was

22   informed that document Bates labeled P6 was responsive.  So,

23   we would ask that there be a supplemental response that

24   confirms that.

25       For the other requests, I know there aren't a lot of

1   pages, but the response was just very general, saying

2   everything has been produced.  I mean, as long as, you know,

3   that's just confirmed, then that's fine.  But for document

4   request number 5, it was an issue.

5           THE COURT:  Okay.  All right.

6           MR. HUEBNER:  But you're saying for -- regarding P6?

7           THE COURT:  That's what she said.  Yeah.

8                       (Extended pause)

9           THE COURT:  All right.  Next is document request 11.

10          MS. LITTMAN:  The plaintiff has stated they will

11  make available their credit report for an *in camera* review.  I

12  don't -- I'm not sure at this time what that means.  We would

13  ask that it be -- that it be produced.  You know, it can be

14  produced for attorneys' eyes only, but plaintiff's credit goes

15  to her damages.  She's also identified her credit reports

16  generally in her initial disclosures, so she should produce

17  the document unredacted.

18          THE COURT:  So, you're looking for --

19          MR. HUEBNER:  What we're saying, Your Honor, is that

20  -- when we say *in camera* review, we meant for attorneys' eyes

21  and for attorneys only.  So, defendants have a number of

22  collection agencies they say that they share information with.

23  So, if my client has information on her credit report that has

24  nothing to do with this litigation, I -- we don't -- it's our

25  position -- and I've done it in other cases before -- like,

Colloquy                                                    13

1   they can come either -- like, at the deposition or whenever

2   and they could see it.

3          I'm representing to the Court and I'm representing

4   to the defendants -- we are, plaintiff is representing that

5   there's nothing -- all the redacted items have nothing to do --

6   nothing to do with this case.  It's all other companies, other

7   issues.  So, it's -- it's -- we -- as -- this is a collection

8   agency and they share with I don't know how many -- 20 other

9   collection agencies -- information, so I don't really see that

10  it's appropriate to give them a written document regarding

11  alleged debt of my client that they can share with other

12  companies.  So --

13          THE COURT:  All right.  I get it.

14          MR. HUEBNER:  -- that's -- they can see it and

15  they'll see that industry has nothing to do with this case.

16          THE COURT:  And I think Ms. Littman just said that

17  she would take it under attorneys' eyes only.  Is that

18  correct, Ms. Littman?

19          MS. LITTMAN:  Yes.

20          THE COURT:  Okay.  So, do we have a discovery

21  confidentiality order in this case?  We should have.

22          MS. LITTMAN:  Yes we do, Your Honor.  You entered

23  one in the form of (indiscernible), yes.

24          THE COURT:  Okay.  So then, Mr. Huebner, produce it

25  under attorney -- designate it attorneys' eyes only.  All

Colloquy                                                    14

1   right?

2           MR. HUEBNER:  (Indiscernible) --

3           THE COURT:  Well -- well, what.  What's the problem?

4           MR. HUEBNER:  Okay.  I just -- I just want to make

5   sure that it's attorney -- they'll -- their attorneys and that

6   company and it's not going to be shared with any other

7   attorneys and any other companies.

8           THE COURT:  When you say that company, Ms. Littman

9   is representing --

10          MR. HUEBNER:  Ms. Littman's firm.  It's not going to

11  -- I apologize.  I apologize, Your Honor.  That it's not going

12  to be shared with any other attorneys and any other firms.

13          THE COURT:  I think -- I haven't read the language

14  of the discovery confidentiality order, but if it's not clear,

15  I'd be happy to clarify it if we have to.

16          Ms. Littman, whatever he's producing to you as

17  attorneys' eyes only is for purposes of this litigation and

18  your review or any attorneys in your firm who are working on

19  this case review.  That is -- that's clear; right?

20          MS. LITTMAN:  Yes, Your Honor.

21          THE COURT:  It's not to be shared with other cases

22  that your firm may have representing any of those other

23  clients; correct?

24          MS. LITTMAN:  Correct, Your Honor.

25          THE COURT:  Okay.  Mr. Huebner, does that satisfy

Colloquy                                    15

1    you?

2              MR. HUEBNER:  Thank you, Your Honor.  Yes.

3              THE COURT:  All right.  Document request 14-16.  We

4    don't have to worry about experts right now.  I will set an

5    expert discovery schedule when we get either beyond a

6    settlement conference or close to dispositive motions.  Okay?

7              MR. HUEBNER:  Thank you, Your Honor.

8              MS. LITTMAN:  Yes, Your Honor.

9              THE COURT:  Document number 18.  We talked about

10   that already.  I guess that's part of the interrog -- did I

11   jump the gun or -- but we talked about the retainer agreement;

12   right?

13             MS. LITTMAN:  Well, the re -- well, part of the

14   retainer agreement has to do with the class, but I believe in

15   response to interrogatory number 7, regarding damages,

16   plaintiff is still going to produce information regarding her

17   damages, which would include the attorneys' fees.

18             THE COURT:  Well, yeah, attorneys -- I mean, --

19             MS. LITTMAN:  For her individual claims.

20             THE COURT:  Yes.  I mean, is that not -- are we

21   having a dispute there that I missed?  Mr. Huebner?  You're

22   going to tell -- when you -- when you identify all of her

23   damages, if attorneys' fees are one of her damages, you have

24   to give a number for that; correct?

25             MR. HUEBNER:  If it's in this case, yes.  Correct.

Colloquy                                              16

1          THE COURT:  Okay.  Document request -- now we're up

2     to 19 and 21.  Oh, we talked about that.  Are we clear that

3     she's not seeking -- that she doesn't have any medical damages

4     by that?  Mr. Huebner, are you also stating she doesn't have

5     any garden variety emotional distress or psychic [sic]

6     damages?

7          MR. HUEBNER:  Is it we're talking about 19 and 21?

8          THE COURT:  Well, that's -- I -- that's the numbers

9     that we're up to, but I --

10         MR. HUEBNER:  Yeah, I got it.  I got it.

11         THE COURT:  But I want to know about her -- as in

12    her elements of damages, whether or not --

13         MR. HUEBNER:  Correct, Your Honor.  That's correct,

14    Your Honor.

15         THE COURT:  Okay.  So then I don't think we have an

16    issue there.  So, I think we're finished with --

17         MR. HUEBNER:  Just wanted one clarification.  So,

18    it's document 11.  Are you saying if she has -- so, if it's

19    attorneys' fees in this case are a measure of damages

20    regarding the payment that she's making to these attorneys,

21    then Your Honor is expecting us to disclose the retainer

22    agreement?

23         THE COURT:  No, I am not expecting you to disclose

24    the retainer agreement.  I'm only --

25         MR. HUEBNER:  Okay.  I just wanted to understand.

1          THE COURT:  I am only expecting you to calculate at

2     some point in time what those damages are or what you --

3          MR. HUEBNER:  Okay.

4          THE COURT:  -- or what you anticipate them to be.

5     Any way you want to do it.  I am not going to lose a lot of

6     sleep over how specifically exact they are at this point in

7     time, --

8          MR. HUEBNER:  Okay.

9          THE COURT:  -- because --

10          MR. HUEBNER:  Thank you, Your Honor.

11          THE COURT:  -- here's how it's going to come out.

12     If you --

13          MR. HUEBNER:  Thank you, Your Honor.

14          THE COURT:  -- a settlement conference and we settle

15     the case, that will be an element of it, but we can deal with

16     it at that time.  If this case --

17          MR. HUEBNER:  Thank you, Your Honor.

18          THE COURT:  -- goes to trial -- if this case goes to

19     trial, then it will certainly be in the final pretrial order

20     as to what exactly those damages are.  Okay?  Or you'll be

21     able to prove it through the time of trial.

22          MR. HUEBNER:  Thank you, Your Honor.

23          THE COURT:  Whatever.  Okay.  Ms. Littman, I think

24     that -- or what else is left of your demands to them that you

25     need to talk about?

1          MS. LITTMAN:  Okay.  So, that concludes everything,

2    Your Honor.

3          THE COURT:  Okay.  Now, let's talk about what

4    plaintiffs are looking for from defense -- from the

5    defendants.  And I am turning to document -- or letter -- the

6    letter dated July 22nd, document number 59.  Mr. Katz's

7    letter.  And turn to page 4, which I believe where -- I mean,

8    after giving me a recitation of all the document demands, I

9    think then page 4 tells me what you're still looking for.

10   Correct?

11         MR. HUEBNER:  Correct, Your Honor.

12         THE COURT:  So, why do you need --

13         MR. HUEBNER:  I'm just trying to open it.  Can you

14   give me one second, Your Honor?  I apologize.

15         THE COURT:  Yes.

16         MR. HUEBNER:  I'm just trying to open up the

17   document.  I apologize.

18         THE COURT:  No, no problem.

19                      (Extended pause)

20         MR. HUEBNER:  Okay.  I'm sorry.  Go ahead, Your

21   Honor.

22         THE COURT:  Let's go to the first one.  You're

23   looking for information regarding the transfer of ownership

24   and -- let me -- let me do it this way.  I don't want to make

25   an issue where there's not an issue.

1        MR. HUEBNER:  We're talking about the July 22nd

2  letter, Your Honor?

3        THE COURT:  Yes.  Yes.  It's document --

4        MR. HUEBNER:  Okay.

5        THE COURT:  -- number 59.  It's 59 and I'm on page

6  4.

7        MR. HUEBNER:  Okay, Your Honor.

8        THE COURT:  Ms. Littman, what is your position on

9  that?

10        MS. LITTMAN:  Well, what identified in -- in the

11  defend -- in the plaintiff's letter they just list, as you

12  said, all of their response -- all of their discovery requests

13  and then they just have a general statement here.  I don't

14  know which response it even -- which request it corresponds

15  to.

16        But, as we've explained in our letter, there are --

17  the -- there's no documents regarding any transfer of debt.

18  In the bankruptcy -- and in -- during the bankruptcy and after

19  the bankruptcy, the debt has always been owned by CACH.  We've

20  produced a chain of title document that shows the only

21  transfer when it was -- when it was purchased previously by

22  CACH, but there is no transfer of ownership in the bankruptcy

23  and that's what my clients have been saying all along in this

24  case.  So, there are no documents.

25        THE COURT:  So, they got -- they took the assets out

Colloquy                                          20

1   of bankruptcy.  Or took the name or the -- or whatever it is

2   they took, they took it out of bankruptcy.

3              MS. LITTMAN:  But CACH's parent filed for --

4   previously for bankruptcy --

5              THE COURT:  Okay.

6              MS. LITTMAN:  -- and CACH, as a subsidiary, was

7   brought in with all of that.  But through the bankruptcy, the

8   -- the -- it only affected the parent.  It never -- it never

9   impacted CACH.  They were the owner during bankruptcy, they're

10  the owner after bankruptcy.

11             THE COURT:  What are you looking for, Mr. Huebner?

12             MR. HUEBNER:  Well, I'm just trying to understand on

13  what authority -- I mean, I'm trying to understand how

14  Resurgent now is acting on behalf of CACH, when rep -- when I

15  understand it in the credit reports, their -- Resurgent's name

16  is coming up and Resurgent is -- is -- what I understand, is

17  communicating with the credit reporting agencies.  So, I want

18  to understand and I want authority on how they're doing it, --

19             THE COURT:  So, you --

20             MR. HUEBNER:  -- if it's not --

21             THE COURT:  All right.  So, you --

22             MR. HUEBNER:  If it's not by a transfer, how am I

23  supposed to know why -- why - how they're doing it?

24             THE COURT:  So you want to know what Resurgent's

25  interest is in the debt and/or by what authority it's

Colloquy                                          21

1   operating on behalf of the debt holder.

2          MR. HUEBNER:  Correct.  I mean, --

3          THE COURT:  (Indiscernible) --

4          MR. HUEBNER:  -- I would have assumed that it's just

5   -- it's an assignment.  But if it's a different way, then

6   we'll -- we'll figure that out.

7          THE COURT:  Did you ask for any -- well, did --

8          MS. LITTMAN:  Well, we --

9          THE COURT:  Could we cut -- Ms. Littman, can we cut

10  to the chase here and can -- whether he -- you're -- who are

11  you representing?  Who is your client?

12         MS. LITTMAN:  CACH and Resurgent Capital Services,

13  RCS.

14         THE COURT:  Are they affiliated with each other or

15  are they operating together by contract or assignment?

16         MS. LITTMAN:  They -- it -- it --

17         THE COURT:  Or both?

18         MS. LITTMAN:  It's a little more complicated than

19  that, but RCS, I believe, is the servicer now, but CACH has

20  always been the owner of the debt and that's what we -- what

21  we've said in our letter.

22         THE COURT:  All right.  So, I'm sorry.  So, you have

23  told the plaintiffs that CH -- CHCA -- CACH is the owner of

24  the debt.  Have you described the relationship between -- is

25  it Resurgent and CACH legally?  In other words, is there an

1   assignment?  Is there a contract?  Is there a retention letter

2   between the two?  I mean, are they affiliated?  I guess the --

3   I think the plaintiff has a right to know.

4            MS. LITTMAN:  So, we -- we will -- we can provide

5   another explanation.  We can --

6            THE COURT:  Yeah, (indiscernible) --

7            MS. LITTMAN:  -- provide an explanation.

8            THE COURT:  Okay.  All right.

9            MR. HUEBNER:  Well, but if there's documents related

10  to that, we're entitled to those documents, Your Honor.

11           THE COURT:  Well, let's see what she tells you first

12  and see if that does --

13           MR. HUEBNER:  Okay.

14           THE COURT:  -- the trick.  And -- and I -- we're on

15  the record.  She heard what you just said, that you want to

16  see documents.  I think it would be appropriate that if there

17  is a contract or an assignment, that that be produced.  If it

18  has to be redacted for certain information, I've done that

19  before.  But let's get the -- let's get the answer first.

20           All right.  So, that -- does that also answer the

21  question on chain of title of debt?

22           MS. LITTMAN:  Well, the chain of title of debt, all

23  documents have been produced regarding that.  I believe that

24  the -- the doc -- bill of sale document said it was purchased

25  from Citibank.  CACH purchased it, I believe from Citibank.

Colloquy                                                23

1    And but there's no other sale documents, because it hasn't --

2    it's still owned by CACH.

3              THE COURT:  Okay.  Mr. Huebner, that sounds like it

4    answers the question.

5              MR. HUEBNER:  Give me one second, Your Honor?

6                         (Extended pause)

7              MR. HUEBNER:  So, the bill of sale and assignment

8    refers to an exhibit 1 and electric [sic] files.  I don't -- I

9    don't have -- I haven't gotten -- I haven't gotten, to my

10   knowledge, an exhibit 1.

11             MS. LITTMAN:  I'm not sure -- I -- it's Bates

12   labeled RCS_005, is the document that I'm referring to.

13             MR. HUEBNER:  Yeah, and RCS_005 refers to an exhibit

14   1 and I don't have the exhibit 1.

15             MS. LITTMAN:  I will check with my client about

16   that.

17             THE COURT:  Okay.  Now, there are a bunch of

18   questions here about the debt portfolio.  Mr. Huebner, what

19   are you looking for there?

20             MR. HUEBNER:  I apologize.  You're talking about

21   from the beginning?  What -- what part of the letter are you

22   on?  I apologize.

23             THE COURT:  I'm on page 4 and it's the big paragraph

24   right in the middle.

25             "Defendants did not provide any information

Colloquy                                                    24

1          regarding all the debt portfolios that CACH devised

2          through the bankruptcy proceedings," --

3              And it looks like, from what I just heard, they

4   didn't devise any.  They just came out of it with what they

5   had.  Ms. -- and I can be corrected.

6              And then:  "A list of all the consumer debt

7   Resurgent Capital reported" --

8              I mean, why do you need all of that?  What does that

9   -- what -- what --

10             MR. HUEBNER:  So, this -- so, what they -- it seems

11  what they have -- it seems that what -- what defendant is

12  doing, is that defendant is acting in two names.  That they're

13  taking debt with CACH and then Resurgent is collecting on the

14  debt.  And -- and -- and it -- this is a class action.  We

15  believe that they did the same thing with my client that they

16  did -- the same thing that they did with my client they did

17  with other -- other consumers.  So, we're entitled to that --

18  that -- that discovery, Your Honor.

19             MS. LITTMAN:  Your Honor, I would submit --

20             MR. HUEBNER:  Well, this isn't --

21             MS. LITTMAN:  -- that this para -- or I -- it --

22  it's very unclear what -- this -- this paragraph that you're

23  referencing where it start -- regarding the debt portfolios.

24  Again, I'm not really sure which numbered requests this

25  corresponds with.  But, again, it's also vague and unclear.

1          THE COURT:  Well, --

2          MR. HUEBNER:  That's why the -- it's -- this is just

3   the bullet points, but that's what --

4          THE COURT:  Well, I could --

5          MR. HUEBNER:  -- (indiscernible) questions --

6          THE COURT:  I mean, I could -- you know, I could

7   guess that it's related to number 26, and number 25, and

8   number 24.  I mean, I understand -- I see the basis for it in

9   the actual document demands.  What I am trying to figure out

10  is --

11         MR. HUEBNER:  But -- but what -- what -- the bullet

12  points are only bullet points.  What I'm saying is, all of

13  these responses, I haven't gotten -- all of the bullet -- high

14  -- all of the numbered responses, I haven't gotten responses

15  to.  They haven't -- the defendant hasn't responded to all of

16  those questions.  Not -- those are just the bullet points,

17  though.  That -- and the culmination of those -- of those 34 --

18         THE COURT:  Well, why we're here, rather than

19  sending you guys back for more briefing and meeting and

20  conferring, while we're here I want to try to get it resolved.

21         Why -- heard your answer that you want to see who

22  they -- else they did to other putative plaintiffs as to who

23  else they may have done that to, as to what they did to your

24  client, but how does having this information help you get

25  there?  That's what I don't -- I'm not understanding.  I am

1    not getting from A to Z based on knowing what their complete

2    debt portfolio looks like and who exchanged debts and things

3    like that.  Are you -- maybe it would help if --

4              MR. HUEBNER:  So, --

5              THE COURT:  -- (indiscernible) exactly what they did

6    to your client.

7              MR. HUEBNER:  Okay.  So, in the credit report --

8    right?  So, they're -- my client's -- after the case -- after

9    my client resolved the issue --

10             THE COURT:  Right.

11             MR. HUEBNER:  -- with CACH --

12             THE COURT:  Made a deal.  They --

13             MR. HUEBNER:  -- and the --

14             THE COURT:  They --

15             MR. HUEBNER:  -- and the case -- and that action was

16   dismissed, --

17             THE COURT:  Right.

18             MR. HUEBNER:  Right?  The following year CACH --

19             THE COURT:  Tried to collect --

20             MR. HUEBNER:  -- (indiscernible) my client's credit

21   report that they only paid a thousand and they had 14,000 past

22   due.  Right off there it's a violation.  And then it says that

23   it has no -- the notations that it's Resurgent -- that it's

24   Resurgent -- care of Resurgent, so I don't know -- and then

25   defendants acquired and produced a document that they say

Colloquy                                                          27

1   there is a report from CACH, but conveniently that -- that

2   report from CACH that they say that at some point in time the

3   -- the account was -- was paid in full, was reported as paid

4   in full and stopped collection, there is no February 8 --

5   there's no February 8, 2018 date on there on the date that the

6   report was made to the credit report with Resurgent's name on

7   it.

8          So, it doesn't show who made that communication and

9   then -- and there's something -- something is very wrong going

10  on here, because the credit reporting agency doesn't just say,

11  well, on February 8 we're just going to decide -- we're just

12  going to -- we're going to mark the account as past due.

13  Somebody has to tell the credit age -- reporting agency that

14  it's past due.

15         And so that's the same thing that I believe that

16  they've done with -- with -- with other -- with other parties

17  in -- in this matter and that's why this case was brought as a

18  class -- as a class action.

19         THE COURT:  I under --

20         MR. HUEBNER:  But I can't do the class action -- I

21  can't move for class certification until I get the discovery.

22         THE COURT:  I understand, but I still -- I

23  understand how -- what your case is about now, I -- which is

24  what I thought it was about, --

25         MR. HUEBNER:  And then there's also a credit -- for

Colloquy                                    28

1   a rep -- a credit -- I apologize, Your Honor.  There's also a

2   Fair Credit Reporting Act claim, because then my client also

3   made a complaint on that and then there's another issue with

4   that, with the Fair Credit Reporting Act.  So, --

5            THE COURT:  I still do not understand why asking for

6   their portfolio, and where they got it from, and who they've

7   exchanged it with, answers those questions.  I think you --

8   you've raised good questions, but I don't understand how this

9   discovery for their entire portfolio and all the other -- and

10  all the debts that they've purchased and all the debts that

11  they resolve -- I don't -- you have to ask -- don't you have

12  to ask questions that go directly to how many times have you

13  reported a debt still open when it -- when you indeed found

14  out later it closed, or something like that?  I can't make up

15  your questions for you.  But I don't understand how knowing

16  what the portfolio -- I don't know how the portfolio gets you

17  to where you want to go.

18           MR. HUEBNER:  Well, so, I get it, Your Honor.  You

19  want -- I mean, that -- that's -- you want me to narrow it

20  down, I can narrow it down, but I think my discovery demand --

21  my document demands are -- are narrowed down and -- and --

22           THE COURT:  Well, they're narrowed down, but I don't

23  know what -- I don't -- I am not following the relevance of

24  it.  And it may be me.  I get it.  It's after three o'clock in

25  the afternoon and I start to fade.  But -- but I -- but I have

Colloquy                                                    29

1    been looking at these letters for a couple of days trying to

2    figure out exactly what is the relevance of -- of your -- your

3    request regarding the portfolio and where it came from and

4    where it's gone.  And what happened in bankruptcy.  None of

5    that, to me, goes to the issue of over-reporting or somebody's

6    credit issues.  I don't get it.

7            And so -- so, to make sure -- if you -- if you think

8    you're talking to a blank wall here and I am not really

9    hearing you, maybe give me a very short letter explaining the

10   connection between your document demands number 24 through 26

11   -- 28, for instance:

12           "All notices that defendants have employed to inform

13       consumers that the CACH" -- I don't even understand that

14       one -- "no longer owns a debt previously owned by CACH."

15           I need a little bit more specificity as to what

16   you're --

17           MR. HUEBNER:  So, they -- they're -- what they're

18   saying, they -- they sent the letter.  They're saying that --

19   that CACH does -- they sent the letter -- before they were

20   done my credit -- client's credit report, they sent a letter

21   saying that CACH doesn't have -- doesn't own the debt.  And

22   then, after they sent the letter saying CACH doesn't own the

23   debt and it no longer exists, they went and downed my client's

24   credit report.  So, could it have been --

25           THE COURT:  (Indiscernible) --

Colloquy                                                    30

1          MR. HUEBNER:  -- a little more artfully articulated?

2   I -- I would --

3          THE COURT:  No.  Well, --

4          MR. HUEBNER:  -- I would concur with Your Honor, but

5   I think that's -- that's what happened in this case.

6          MS. LITTMAN:  Your Honor, I --

7          MR. HUEBNER:  So, that's a specific -- they're --

8   excuse me, please.  That -- that's a specific request as to

9   exactly what happened to my client.  So, if they -- if they

10  sent letters to -- and that's why I made it a broad scope, --

11         THE COURT:  See -- see --

12         MR. HUEBNER:  -- because they're going to -- then

13  they'll just say it happened and they'll just say, no, it

14  didn't happen.

15         THE COURT:  But --

16         MR. HUEBNER:  So, without the portfolios and without

17  the letters, without the information, I'm -- I'm really not

18  going to know.

19         THE COURT:  What -- number 30 I think is directly on

20  point.  I think that's a really good demand.  And I'm --

21  somebody refresh my recollection.

22         "A copy of communications that defendants made with

23     a credit reporting agency after the debt has been

24     settled."

25         That's -- that goes to what you just talked to me

Colloquy                                            31

1   about.  Has that -- has defend -- have defendants produced

2   documents or given you a response to that?

3          MR. HUEBNER:  (Indiscernible) --

4          THE COURT:  Let me ask Ms. -- let me ask Ms.

5   Littman.  What is --

6          MS. LITTMAN:  Your Honor -- oh, I'm sorry.  As

7   stated in our letter, we first of all objected to number 30 on

8   the grounds that there's no time limitation, no scope

9   limitation on it.  For starters.  And the only issue that

10  plaintiff is raising in this case has to do with the -- with

11  TransUnion.  Not with the other consumer reporting agencies,

12  Equifax and Experian.

13         My client RC -- or Resurge -- or RCS has produced

14  its entire credit reporting history regarding plaintiff's

15  account to plaintiff.  So, they have a copy of the information

16  that my -- that was transmitted to TransUnion.  So with regard

17  to the plaintiff, that information has been produced.

18         THE COURT:  Mr. Huebner, I see you shaking your

19  head.

20         MR. HUEBNER:  Yeah.  So, okay.  So, let's go back to

21  that, Your Honor.  So, --

22                  (Extended pause)

23         MR. HUEBNER:  Plaintiff's credit report says that

24  there's a debt owed and past due with CACH, LLC.  First of

25  all, it's -- it doesn't matter if it's TransUnion or any --

Colloquy                                            32

1    it's -- this class -- I apologize.  This case applies to all

2    violations regarding all collection agencies.  It's not

3    limited to violations that they did only with this one

4    collection agency.  It's -- if they did it with others, that's

5    part of it.  Because they violated my client on one collection

6    agency doesn't mean that they didn't violate other members of

7    the class with other collection agencies.  There's no such

8    thing as a class that's limited only to the same collection

9    agency.  It's limited to the violation, not to the collection

10   agency.

11         The second thing is that -- is that it says that the

12   debt is -- it says CACH, LLC, care of Resurgent Capital

13   Services.  And then it says the balance is $14,372.  And it

14   says the date was updated on February 3, 2018.  And then it

15   says the original amount was 15,372 and the original creditor

16   was Citibank and the past due amount is $14,372.

17         Now, I don't know who made that report to the credit

18   -- my client's credit reporting bureau, but the document

19   RCS_001, that -- that Resurgent furnishes, that the defendants

20   furnish -- so, there's an entry for April 3, there's an entry

21   for March 7 of 2018, and an example [sic] of January 31, 2000

22   -- and -- and January 1 -- I mean, January 31 of 2018, but

23   there's no entry on this printout that they give for -- for --

24   for February 3, 2018.  So, somebody made a communication on

25   February 3, 2018.

1        In the response that they gave, it only lists

2   reporter origination is CACH, LLC.  Now, I don't know who

3   reported on February, but that's not listed on this document

4   here and that's why we're entitled to the computer -- the

5   computer coding.  Anybody can print the printout and just --

6   and -- and say this is what it is.  And that's why one of the

7   things we asked for was the computer coding and that's why

8   we're entitled to the computer coding, because that will tell

9   us who they communicated with and how they communicated with

10  them.

11       I mean, this is the most simplistic of any class

12  action lawsuit with a collection agency that I have ever done

13  before.  This is absolutely the most deficient and -- and --

14  and -- and -- and manner of -- this doesn't even show the

15  manner of -- I mean, there -- there's a whole -- they have a

16  list of communication.  There's a way when they communicated.

17  There's a whole report when they communicate.  This is not a

18  report generated from collection agencies, this is like a mini

19  summary.  There's way more than that.  There's -- there's

20  nothing -- this is -- this is -- it's zero from zero and it's

21  not accurate.  I would almost say it's almost a fraud, but --

22       THE COURT:  Do you have --

23       MR. HUEBNER:  -- I don't know that yet, but I --

24   it's -- it's --

25       MS. LITTMAN:  Your Honor, I would object to Mr.

1  Huebner's characterizations of my clients and the documents

2  that (indiscernible) --

3            MR. HUEBNER:  You -- you --

4            THE COURT:  (Indiscernible) --

5            MR. HUEBNER:  I -- I mean, you can object.

6            THE COURT:  -- (indiscernible) --

7            MR. HUEBNER:  I said almost a -- I would say that

8  it's almost a fraud.  And you can object to that.

9            THE COURT:  (Indiscernible) --

10           MR. HUEBNER:  That's fair.

11           THE COURT:  -- that and see if we can get relevant

12 discovery here.

13           When did you ask for the computer coding?  Did you

14 ask for that?

15           MR. HUEBNER:  Yes, Your Honor.

16           THE COURT:  Where?

17           MR. HUEBNER:  I'm -- I'm sorry, but I'm list -- I'm

18 -- I apologize, Your Honor.

19           THE COURT:  Where did you ask for that?

20           MR. HUEBNER:  So, when they give that -- when they

21 gave their -- the -- give me a minute, Your Honor.

22           So, that -- when they gave that res -- that -- when

23 they gave that response that's completely inefficient, that's

24 when I told them that's what I need.  That's when I sent them

25 the letter, I need that computer coding.  You can't just give

Colloquy                                            35

1    me a one-page printout.  I mean, I've gotten page -- printouts

2    from collection agencies with all their notes and a history of

3    the account and the rec -- and the records of conversations.

4    There's records of conversations that -- that the collection

5    had with the reporting agency or -- or --

6              THE COURT:  Well, I'm --

7              MR. HUEBNER:  -- or -- or with --

8              THE COURT:  I'm aware of all that kind of discovery

9    and (indiscernible) --

10             MR. HUEBNER:  And -- and -- and -- and so when they

11   -- when I -- that's why I sent them that letter, just like

12   they said they wanted updates.  They sent a document demand so

13   they want me to -- they put it in a letter, they want me to

14   put something in writing.  So I -- same thing, I sent a letter

15   in.  I sent that bullet point that I want the computer coding

16   then you -- that's -- I'm entitled to that.  If they're saying

17   that this is their only page, which is completely ridiculous,

18   then I want the computer coding.

19             MS. LITTMAN:  I don't -- I don't under --

20             MR. HUEBNER:  (Indiscernible) it's not complicated.

21   I'm not --

22             MS. LITTMAN:  Well, --

23             MR. HUEBNER:  -- a computer programmer.  That's all

24   my computer (indiscernible) --

25             THE COURT:  No, but I don't understand.  Usually --

Colloquy                                36

1   usually, when I'm managing these cases and somebody is -- it's

2   a class action case against the debt collector or the

3   servicer, there are notes that are kept.  Those are printed

4   out and -- and sometimes we fight about how much -- many of

5   the notes or how much of the notes or how broadly across the

6   class the notes should be, but the actual code -- I mean, I'm

7   not sure I understand the ex -- it seems like we've skipped

8   something here.

9           MR. HUEBNER:  Well, when --

10          THE COURT:  I think we --

11                    (Extended pause)

12          MR. HUEBNER:  I apologize.  Go ahead, Your Honor.

13          THE COURT:  Maybe I'm misunderstanding your

14   question.  Computer coding language.  You mean you want, like,

15   a key that tells you -- like, you want to know -- you want to

16   be able to transmit -- you want to be able to translate the

17   language from CACH or Resurgent to the credit reporting

18   agencies?  Is that what you're looking into?  Apply that key

19   and -- apply the key against the correspondence that they've

20   sent you?

21          MR. HUEBNER:  They have a way -- they have -- that's

22   all available.  If they -- the comp -- the printout -- the

23   printout doesn't do -- not -- it's not manually typed.  The

24   printout doesn't do it by itself.  It only does it by

25   according to information that's fed into the computer.  So,

Colloquy                                              37

1  they have a system that they feed into the computer and that

2  system -- that -- that system that they feed into the computer

3  generates the information (a) to the -- to the collection

4  agency and -- I mean to the credit reporting agency and the --

5  and -- and -- and it also tells when the let -- when letters

6  were sent.

7          And just for as an example, Your Honor, in -- in --

8  initial -- the next page, on -- on RCS_002 that they furnish,

9  it's -- it's not a letter from CACH, it's a letter from

10 Resurgent Capital Services.  And it's dated January 30, 2018.

11 And it says thank you for your payment and -- and -- on the

12 above-referenced account.  In the event that this payment is

13 returned as insufficient, the settlement and letter will

14 become void.  But -- and it says customer service department,

15 Resurgent Capital Services, LLP, and it doesn't even mention

16 CACH and it doesn't mention --

17          MS. LITTMAN:  Yeah, you're -- you're --

18          MR. HUEBNER:  -- (indiscernible) what --

19          MS. LITTMAN:  Mr. Huebner, the letter does mention

20 CACH.  At the top it says current owner CACH, LLC.

21          MR. HUEBNER:  Thank you for interrupting me.  And

22 you could have brought that up at the end of my conversat --

23 my comment at least.

24          So -- and so the point is that that letter is not

25 even referred to in the supposed -- the supposed one page

Colloquy                                                    38

1   report with -- on -- on -- on Z_001 [sic].  So, there's

2   something wrong here, because if -- there is something wrong.

3   It -- either it's -- there's two different companies doing

4   different reporting or -- or there's a miss -- there is

5   something wrong here.

6          If that letter -- if CACH and L -- and Resurgent

7   were working together as one entity, then that letter would be

8   referred to in this report and the letter is not referred to.

9   So, there's a let -- I'm -- I'm not getting the full

10  information, so I got to get the full information, and there

11  has to be a way to get it, and there is a way to get it, and

12  that's why the computer coding will just give it to me.

13         THE COURT:  All right.  This is what I want you to

14  do.  I was hoping to avoid this, but I think it's only fair

15  for me, so I can understand and then I can give Ms. Littman a

16  chance to respond.  This particular -- we're right toward the

17  end here of all of this.  I think we have resolved almost

18  everything, except this whole issue of how much across-the-

19  class type information that you want.  And I do think you're

20  saying two different things and I'm not -- so, I want you to

21  put it in writing to me what exact information are you seeking

22  from the defendants, and I want you to tell me whether it's

23  related to your -- your need to have information so that you

24  can move to certify a class or whether it's to do with the

25  merits of your client's single complaint.  You know, your

Colloquy                                                    39

1   client individually.  I --

2            MR. HUEBNER:  Well, there's --

3            THE COURT:  And I want you to tell -- and I -- and I

4   want you to -- what you just went through, by telling me how

5   you have a letter that they produced, which is not showing

6   itself up on the report and why -- how -- how that creates

7   gaps in information, I need you to tell me that in writing, so

8   I can understand it.  And I want -- then I want Ms. Littman to

9   respond to it, so I can make a reasoned decision on how much

10  discovery to require the defendant to produce in this case.

11           Also, I need you to do this.  When you're doing

12  that, I want you to tell me which document demand or

13  interrogatory originally sought that information.  It may be --

14  I get a sense that perhaps when you didn't get the information

15  you were looking for the first time, you kind of restated --

16  and I'm look -- in this letter, ECF 59, you kind of restated

17  what you need so that you can get to that information.  If I'm

18  wrong, I'm wrong.  But if I'm right, then I -- you'll -- I

19  need to know that, too, so I could either relate it to an

20  interrogatory that's been posed or perhaps to a new

21  interrogatory that you now need to pose, because they didn't

22  answer the first one correctly.  Okay?

23           MR. HUEBNER:  Okay, Your Honor.  That's fair.

24           THE COURT:  I need -- I just need you to tell me

25  exactly what you're looking for and why you're looking for it

Colloquy                                                      40

1   in connection to the merits of your claim, whether they are

2   the merits on the class claim or the individual claim.  All

3   right?

4             I think I understand what you're looking for.  I am

5   not sure I've seen it requested like this, if I'm right.  But

6   if I'm wrong, then that will -- you'll help -- your letter

7   will help clarify it for me, so then I'll know what to do.

8   All right?

9             MR. HUEBNER:  And maybe -- Your Honor, maybe it --

10  that I -- maybe I need to furnish a new redirected document

11  demand.  And I'm not sure, because the document demands did

12  say whether it's by computer or whether it's by -- whether

13  it's by computer or whether it's by paper, so I don't -- I

14  think that that would have covered it.  But I'll -- I'll --

15  I'll try to go in detail on it, Your Honor.

16            THE COURT:  I'm not suggesting it didn't, I'm just

17  not -- I'm just not really right now understanding it and I

18  need to be refocused on this.

19            MR. HUEBNER:  Again, that -- well, I -- I -- the

20  same way that I wasn't re-understand -- I wasn't understanding

21  when I get a document that's one page and then I get the next

22  document that's not even referred to, and it's from Resurgent

23  Capital, and it's for -- it's not even referred to in the --

24  in the -- in the -- in the supposed page it's supposed to be

25  referring to.

Colloquy                                        41

1          THE COURT:  All right.  So, when can you get me that

2    letter?

3          MR. HUEBNER:  In about two weeks, Your Honor?  Is

4    that --

5          THE COURT:  Two weeks --

6          MR. HUEBNER:  -- (indiscernible) please?

7          THE COURT:  Two weeks is fine.  And then, Ms.

8    Littman, can you respond to his letter within two weeks

9    thereafter?

10         MS. LITTMAN:  Yes, Your Honor.

11         MR. HUEBNER:  Now, the --

12         MS. LITTMAN:  Yes, Your Honor.

13         THE COURT:  All right.  I think that brings us to --

14   wait a minute.  I just want to check something out.

15                    (Extended pause)

16         THE COURT:  The other issue that is still here in

17   your letter, which we didn't get to yet, is that apparently

18   defendants did not answer your document demands on lawsuits

19   from January 1 to the present either that they filed against

20   consumers or that they were a party to.  Which I guess means

21   that consumers filed against them.

22         Ms. Littman, what is your position on that?

23         MS. LITTMAN:  Just one second, Your Honor.

24                    (Extended pause)

25         MS. LITTMAN:  Well, the way it's framed, all

1   documents of lawsuits for the last almost five years, with no

2   limitation as to time, scope, for -- you know, for federal

3   lawsuits, the plaintiff could look that information up on

4   PACER, but it's all documents.  You know, that's overly broad,

5   meaning complaints, answers.  And also I don't know -- I mean,

6   and discovery?  It's just framed entirely too broad and not

7   limited at all to any claims that are -- it's looking for

8   basically everything, I'm presuming, that ever would even be

9   considered an FDCPA violation, not limited at all to anything,

10  you know, having to do with the claims that the plaintiff is

11  asserting.  And so that information would be irrelevant and

12  not proportional to the case.

13          THE COURT:  Mr. Huebner, I think there's some weight

14  to what she's saying.  What exact -- what are you look --

15  narrow that down.  Here's what I'm going to ask -- let's -- we

16  don't have to discuss it.  Narrow it down.

17          MR. HUEBNER:  You want me to narrow it down, I'll --

18  you want me to -- can I -- you want me to give a detailed

19  letter with my discovery issues in a more narrow and specific

20  way, even though I haven't gotten a response to the majority

21  of my questions?  I'll do that, Your Honor.

22          There's also the redacted issue, Your Honor, which I

23  referred to, which I got redacted documents.  That's totally

24  inappropriate, Your Honor.

25          THE COURT:  Wait.  Before we get to the redacted

Colloquy                                    43

1    issue, I am just --

2              MR. HUEBNER:  Right.

3              THE COURT:  -- interested to know -- I mean, I deal

4    with these questions all the time about give me all lawsuits

5    that your client has been involved with and I -- frankly, that

6    is way over broad.  I mean, lawsuits regarding what kind of

7    claims?  January 1, 2015 to the present, it may be --

8              MR. HUEBNER:  (Indiscernible) --

9              THE COURT:  When was the bank -- when was the bank --

10   when was the bankruptcy?

11                        (Extended pause)

12             MR. HUEBNER:  You're asking me or you're asking me

13   or you're asking Ms. Littman?

14             THE COURT:  I'm asking anybody who knows the answer.

15             MS. LITTMAN:  I could give you the answer.

16                        (Extended pause)

17             MS. LITTMAN:  Well, I know that it was at least

18   prior -- it -- the quick information that I have is that --

19             THE COURT:  It was January --

20             MS. LITTMAN:  -- (indiscernible) --

21             THE COURT:  It was filed in 2017.  I have it right

22   in front of me.

23             MS. LITTMAN:  Okay.  That's -- that's what I was

24   going to say.

25             THE COURT:  I mean, I don't know whether or not,

Colloquy                                                   44

1  based on these allegation, that there was some reorganization

2  or something taken out or something left -- I don't know

3  whether or not 2015 to 2017 is even relevant.  Maybe it is.  I

4  don't know.

5            But the point is, this needs to be narrowed down and

6  then Ms. Littman can respond accordingly.  And if I have to

7  get involved, I'll get involved.  I mean, it's just too broad

8  against -- against consumers?  I mean, what difference does it

9  make?  There could be 100,000 different ways that they sued

10  other consumers that have nothing to do with the dispute

11  between you and them.

12            So, just -- you know, let me go back for a minute.

13  Let me -- now, tell me about the redaction problem.

14            MR. HUEBNER:  Give me one minute, Your Honor, and

15  I'll do that.  Just give me a second.  I apologize.

16                      (Extended pause)

17            MR. HUEBNER:  So, we entered --

18            THE COURT:  You have --

19            MR. HUEBNER:  -- they said the -- the -- the

20  defendants said they didn't want to turn over their manual

21  until they get a confidentiality order.

22            THE COURT:  Okay.

23            MR. HUEBNER:  And then they turned over the manual

24  after we got the confidentiality order, and -- and 204 pages

25  of the manual, at defendants' choice, have been completed

Colloquy                                          45

1    redacted.  Of the 283-page manual, 204 pages have been

2    redacted.

3            They want a copy of my client's credit report.  They

4    say I can't claim -- that it can't be redacted, they say I

5    have to give them the credit report and it's for attorneys'

6    eyes only?  That's why we entered into a confidentiality

7    order?  They can't now redact it and tell me what's relevant

8    and what's not relevant.  That's not their case to make.

9            And if they want -- if it's a motion for summary

10   judgment or something like that or class certification and

11   they want to say that that part that I'm citing to in the --

12   in the part that's going to confidentially filed with the

13   Court is not relevant, they can say that.  But it's not their

14   choice to decide that it's irrelevant.  It's their manual.

15   Give me the manual and then -- and then -- and let -- and let

16   me see the manual and then I -- when it comes to the Court, if

17   it's -- if I'm citing something in the manual that's

18   irrelevant, that's for oral -- that's for argument.  That's

19   not for them to unilaterally decide that it's -- that it's --

20   that it's irrelevant.

21           I mean, then I'll never get any discovery and then

22   all they have to do is just say it's irrelevant so we don't

23   have to give it to you.

24           THE COURT:  Ms. Littman?

25           MS. LITTMAN:  Your Honor, the entry of a

Colloquy                                              46

1  confidentiality order does not mean that any party can -- has

2  to produce irrelevant or confidential and proprietary

3  information.

4          We have produced the agency manual portions that are

5  relevant and responsive to the request.  We have also produced

6  the table of contents, unredacted, of the entire manual and

7  have said several times that plaintiff may review the table of

8  contents and if they have specific questions regarding a

9  section that was redacted, we would be happy to address those

10 issues.  But plaintiff has never taken us up on this request

11 to even further discuss whether there's any other sections

12 that plaintiff deems are relevant.

13         So, at a minimum, plaintiff should be -- should do

14 that first, instead of just blanketly saying we need

15 everything.

16         MR. HUEBNER:  I -- I brought it up.  I brought up

17 with it that I'm entitled to the manual and they said you're

18 not entitled to the manual and we're not going to give it to

19 you, and we spoke with our client and we're still not giving

20 it to you.  So, it's not -- I don't really -- I don't

21 understand what that is.  I don't -- I mean, I -- I have no --

22 I have no faith --

23         THE COURT:  All right.  Let's --

24         MR. HUEBNER:  -- in -- in -- in -- in their

25 representations that it's irrelevant, when I got a one-page

Colloquy                                    47

1  document here that doesn't even list the February 8, 2018

2  entry and doesn't even letter -- list the -- the letter from

3  Resurgent, and it says every entry here is by CACH.  So, I

4  have no faith in their -- in their -- in their -- in -- in

5  defendants' responses that they disclosed --

6          THE COURT:  All right.

7          MR. HUEBNER:  -- in a good faith manner --

8          THE COURT:  Okay.  Ms. Littman, did you give me any

9  briefing on this issue of redaction of the manual?

10         MS. LITTMAN:  This -- I mean, we had -- we've listed

11  it in the doc -- it's -- hold on.

12         THE COURT:  I mean, but did you give me a reasoning

13  why you redacted it or why you should not [sic] be entitled to

14  redact it or any -- I'm just looking?

15         MS. LITTMAN:  Well, right.  We have stated it in --

16  at the end of our letter, document number 63, we explain that.

17         THE COURT:  Yeah.

18         MS. LITTMAN:  We didn't -- we explained what I said,

19  that we have asked for plaintiff to discuss with us the table

20  of contents and other sections about that.

21         MR. HUEBNER:  They wrote --

22         MS. LITTMAN:  But plaintiff has not done so.

23         MR. HUEBNER:  They wrote --

24         THE COURT:  I need a --

25         MR. HUEBNER:  They wrote a letter to me --

Colloquy                                         48

1          THE COURT:  I need -- I need a little bit more than

2     that.

3          MR. HUEBNER:  They wrote a letter --

4          MS. LITTMAN:  And we'll submit that, Your Honor.

5          MR. HUEBNER:  -- to me, Your Honor.

6          THE COURT:  Excuse me.  I'm talking.

7          MR. HUEBNER:  I apologize, Your Honor.  I -- I -- it

8     was a (indiscernible) --

9          THE COURT:  I need a little bit more than that, Ms.

10    Littman.

11         MS. LITTMAN:  Okay, Your Honor.

12         THE COURT:  You're -- you shouldn't be -- I mean,

13    counsel is right.  If anybody is going to make a decision

14    about relevancy, fortunately or unfortunately, it has to be

15    made.  Redactions for relevance are not really permitted.  You

16    can redact for -- for privilege, if that's what you're doing.

17    And the proprietary information should be covered by the

18    attorneys' eyes only or any other discovery confidentiality

19    order thing.

20         I mean, it might have to work the other way.

21    Counsel wanted you to assure him, Ms. Littman, that you

22    weren't going to share her credit report with other people.

23    You expect the same requirements from plaintiff's counsel not

24    to share this manual if it contains proprietary information

25    that you designated as attorneys' eyes only.

Colloquy                                                    49

1          If it turns out counsel, Mr. Huebner, that you think

2     you're going to have to use those provisions or you have to

3     somehow discuss them with your client, then you can -- there's

4     a procedure under the discovery confidentiality order that if

5     people cannot agree on how that should work then, again, I get

6     to step in and make a decision.

7          But, first of all, I think I want to hear from Ms.

8     Littman as to why redactions were made in the first place and

9     give me and Mr. Huebner some indication as to what's being

10    redacted.  I don't like the idea of having to have Mr. Huebner

11    review the table of contents and make his own decisions about

12    what he thinks may be in there for him to see.  You need to

13    tell us what you're -- some idea of what you're redacting.

14         MS. LITTMAN:  Then I will submit supplemental

15    briefing on that --

16         THE COURT:  He's not --

17         MS. LITTMAN:  -- within 14 days, Your Honor.

18         THE COURT:  Can you do that in two weeks?

19         MS. LITTMAN:  Yes, Your Honor.

20         THE COURT:  And then, Mr. Huebner, can you respond

21    to her letter in two weeks thereafter?  Just the way we're

22    doing it for your stuff?

23         MR. HUEBNER:  That's a quest -- I'm just trying to

24    understand something, Your Honor, because I've never had a

25    case where I didn't get the manual.  And especially when it --

Colloquy                                                      50

1   as I -- I didn't battle about the confidentiality order and

2   the confidentiality is really -- it's a courtesy,.  They're

3   not, by law, entitled to a convent -- a cadet -- blah, blah --

4   a confidentiality order, so I didn't --

5          THE COURT:  (Indiscernible) --

6          MR. HUEBNER:  -- battle with it --

7          THE COURT:  In this court --

8          MR. HUEBNER:  -- and I don't know --

9          THE COURT:  In this court --

10         MR. HUEBNER:  -- why I'm not entitled to my -- my --

11  to the documents.  And all she said the reason is, it's

12  irrelevant, and that's --

13         MS. LITTMAN:  No, no, I did not --

14         MR. HUEBNER:  -- just simply not --

15         MS. LITTMAN:  I did not say only irrelevant.  It's

16  stated in our letter that there are --

17         MR. HUEBNER:  Proprietary.

18         MS. LITTMAN:  -- proprietary policies that --

19         MR. HUEBNER:  But proprietary is covered by the

20  confidentiality order, so what -- what -- it's -- and I can't

21  -- just because something --

22         THE COURT:  Mr. Huebner, --

23         MR. HUEBNER:  -- (indiscernible) something --

24         THE COURT:  Mr. Huebner?  Mr. Huebner, why are you

25  arguing this?  I actually just ruled in your favor.

Colloquy                                                51

1          MR. HUEBNER:  I thought that, Your Honor.  I

2    apologize.

3          THE COURT:  So, why are -- so, what are you doing

4    this?  I mean, I am trying to stop the disputes and get this

5    case moving forward.  I just ruled in your favor on this, in

6    terms of making them explain it.  And I will say this.  If you

7    have been litigating these cases for a while, which I perceive

8    that you have, and you never had a problem getting a manual?

9    God bless you, because I've already had to litigate that --

10   I've had to make that decision at least ten times in the last

11   five years.  So, --

12         MR. HUEBNER:  I've had defendants jump up and down,

13   but at the end of the day, I always got the manual.

14         THE COURT:  Well, good.  And I mean that.  I am not

15   trying to be sarcastic.  I mean that sincerely.  That's good.

16   Because I have seen it as an issue more than once in this

17   court.

18         And in terms of what you said about discovery

19   confidentiality orders, they're not a courtesy.  I've enforced

20   them and I've had them -- I have signed them when both sides --

21   when nobody wanted one, because, frankly, if I don't do that,

22   then the attorneys fight with each other all day long about

23   everything.  So, here we are.

24         I think we're done for today.

25         MS. LITTMAN:  Yes, Your Honor.  Could I have two

Colloquy                                                52

1  housekeeping items?

2          THE COURT:  Okay.

3          MS. LITTMAN:  I just wanted to confirm.  There were

4  two items earlier in the call that you wanted defendants to

5  provide further about explanation about the defendants -- we

6  talked -- you asked if there was a contract or assignment, and

7  plaintiff had a question about an exhibit 1 to the bill of

8  sale, and I just wanted to confirm our timing for that would

9  be 14 days to --

10          THE COURT:  Everything is two -- everything that

11 I've asked anybody to do is two weeks.

12          MS. LITTMAN:  Okay.  Thank you, Your Honor.

13          And also I believe there was the one final issue, I

14 don't know if we were going to discuss it, about plaintiff's

15 request to extend the deadline to add or amend parties.

16          THE COURT:  I am probably going to extend that

17 deadline.  We haven't finished written discovery and I'd like

18 to have written discovery finished so that everybody has a

19 fair chance to understand at least in writing what the other

20 side's position is, what the documents look like.

21          What is the current date?  And I know you asked --

22 you told me, but what is -- can you remind me?

23          MS. LITTMAN:  Yes, Your Honor.

24                      (Extended pause)

25          MS. LITTMAN:  The current deadline -- or I believe

Colloquy                                          53

1    the deadline had passed.

2              THE COURT:  Okay.

3              MS. LITTMAN:  July 22nd.  So, --

4              THE COURT:  All right.  Well, --

5              MS. LITTMAN:  -- and that's -- I believe that's when

6    plaintiff --

7              THE COURT:  I'd really like to get all the written

8    discovery, all these issues done no later than mid-September.

9    I mean, since I've given you each basically a month's worth of

10   letter writing and it's now August 8th or whatever the date

11   is.  So, --

12             MR. HUEBNER:  August 6th, Your Honor.

13             THE COURT:  August 6th.  So, Jan -- hopefully we're

14   done by September 6th with the letter writing and then I have

15   to make a decision.  Maybe some of it will be worked out, but

16   it's -- I'm sure I'll have to make some decisions.

17             I am going to set October 15th -- anybody have a

18   calendar?  What is October -- what day of the week is October

19   15th?

20             MS. LITTMAN:  That is a Thursday.

21             THE COURT:  Make it October 16th for motions to

22   amend or name -- or add new parties.  And I'll set the

23   discovery calendar -- the discovery end date -- fact discovery

24   end date out to, right now, November 30th.  That may be a

25   little tight, but I'm going to set it for November 30th.

Colloquy                                                        54

1   Okay?

2              MR. HUEBNER:  Thank you, Your Honor.

3              MS. LITTMAN:  Thank you, Your Honor.

4              THE COURT:  All right.  We'll --

5              MR. HUEBNER:  Be safe and be healthy, Your Honor.

6              THE COURT:  Everybody stay healthy.

7              MS. LITTMAN:  Thank you, Your Honor.

8              THE COURT:  I have aller -- I know I am coughing,

9   but I have allergies.

10             MR. HUEBNER:  I'm not -- I'm not worried.  I already

11  had -- I don't know, I'm not -- I'm not over worried.  I had --

12  I got over the coronavirus.  My wife had it.  Luck -- thank

13  God -- thank God we didn't have it -- we didn't get hit hard.

14  It was like a two, three-week flu.

15             THE COURT:  Good.

16             MR. HUEBNER:  But -- but --

17             THE COURT:  I mean, not good.  I mean, but good you

18  had it --

19             MR. HUEBNER:  I get it.  No, I get what you're

20  saying, Your Honor.  I get it.  So, --

21             THE COURT:  Good you had it and survived.  Okay,

22  everybody.

23             MR. HUEBNER:  My retina surgery, which was five

24  times -- you know they say five times is a charm.  Isn't that

25  it?  I don't know.  Hopefully, that will -- that will do it,

Colloquy                                                    55

1   so --

2             THE COURT:  Five times?  Five times for --

3             MR. HUEBNER:  Five -- five times, Your Honor.

4             THE COURT:  I'm sorry to hear that.  I really am.

5             MR. HUEBNER:  So, hopefully it will -- this is the

6   last time, it looks like, hopefully.

7             THE COURT:  Okay.

8             MR. HUEBNER:  Thank you, Your Honor.

9             THE COURT:  Ms. Littman, you're (indiscernible) --

10            MR. KATZ:  Thank you, Judge.

11            THE COURT:  Ms. Littman, (indiscernible) --

12            MS. LITTMAN:  Thank you, Your Honor.  Stay safe,

13  everyone.  Thank you very much.

14            THE COURT:  Okay.

15            MS. LITTMAN:  Bye-bye.

16                    (Zoom call terminated.)

17            THE COURT:  You still there, Tim?

18            THE LAW CLERK:  Yes, I'm here.  Sorry, I --

19            THE COURT:  I'm going to stop the recording.  Hold

20  on a minute.  I'm having a hard time with this for some

21  reason.  Here we go.

22                    (Conference recording concluded.)

23                    *  *  *  *  *  *  *  *  *

24

25

56

1            C E R T I F I C A T I O N

2        I, TERRY L. DeMARCO, court-approved transcriber,

3  certify that the foregoing is a correct transcript from the

4  electronic sound recording of the proceedings in the above-

5  entitled matter recorded on August 6, 2020.

6

7

8  _____07/19/21_____                    _S / Terry L. DeMarco_

9      Date                             Terry L. DeMarco, AD/T 566

10                                       KLJ Transcription Service

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25